NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHURCH & DWIGHT CO., INC., | |
| Plaintiff, | |
| v. | Civil Action No. 05-2142 (GEB) |
| ABBOTT LABORATORIES, | **MEMORANDUM OPINION** |
| Defendant. | |

**BROWN, Chief Judge**

    This matter comes before the Court upon Defendant Abbott Laboratories' ("Abbott" or "Defendant") Motion for Leave to File an Amended Counterclaim and to Join Inverness Medical Switzerland GMBH ("Inverness"), and Plaintiff Church & Dwight Co., Inc.'s ("Church & Dwight" or "Plaintiff") Cross-Motion to Dismiss Abbott's Counterclaim of Infringement. The Court has decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court denies Abbott's Motion for Leave to File an Amended Counterclaim and to Join Inverness and grants Church & Dwight's Cross-Motion.

**I.    BACKGROUND**

    On June 9, 1992, November 26, 1996 and March 18, 2003, the United States Patent and Trademark Office (the "USPTO") issued U.S. Patents 5,120,643, 5,578,577 and 6,534,320 respectively (the "Detergent Patents") to Abbott. Abbott Br. 1. Abbott sold the Detergent Patents to Inverness on September 30, 2003. *Id*. at 1. The terms of that agreement are memorialized in a publicly-filed document entitled the Patent Assignment Agreement (the

"Patent Assignment Agreement"). *See* Declaration of Baltassare Vinti ("Vinti Decl."), Ex. A. On the same day, Abbott entered into a License Agreement with Inverness (the "License Agreement") granting Abbott the right to practice the Detergent Patents. Church Reply 1; *see also* Declaration of J. Hand ("Hand Decl.") Ex. A.

On April 20, 2005, Church & Dwight filed a complaint against Abbott, alleging willful infringement of Church & Dwight's immuno-assay test device patents. *See* Compl. ¶¶ 11-25. On September 6, 2005, Abbott answered the Complaint, and filed a Counterclaim against Church & Dwight alleging infringement of the Detergent Patents. Answer & Counterclaim 10-15. On July 28, 2006, Abbott filed a Motion for Leave to File an Amended Counterclaim and to Join Inverness Pursuant to Federal Rule of Civil Procedure 19. On August 7, 2006, Church & Dwight filed a Cross-Motion to Dismiss Abbott's Counterclaim of Infringement.

**II.   DISCUSSION**

    **A.   Does Abbott have standing for its claims of infringement after September 30, 2003?**

        1.   Abbott's standing to file claims of infringement in its own name.

Abbott argues that since it remains an allegedly exclusive licensee of the Detergent Patents, it has standing to assert its claims for infringement of those Patents after September 30, 2006 in its own name. This Court disagrees.

Under 35 U.S.C. § 281, "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. "The term patentee includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." *Ortho Pharma. Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1030 (Fed. Cir. 1995) (quotations omitted), *quoting* 35

U.S.C. § 100(d). "A transfer of "title" to a patent - also called an assignment - is governed by 35 U.S.C. § 261." *Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000). That provision states, in part, that:

> Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.

35 U.S.C. § 261.

"Without the patentee as plaintiff, the remedies provided in the patent statute are unavailable except in extraordinary circumstances as where the patentee is the infringer, and cannot sue himself." *Ortho*, at 1030 (quotations omitted), *quoting Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891). The Federal Circuit has however "permitted an *exclusive licensee* to bring suit in its own name if the exclusive licensee holds *"all substantial rights"* in the patent." *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001) (emphasis added); *see also Textile Prod., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998) ("A licensee is not entitled to bring suit in its own name as a patentee, unless the licensee holds "all substantial rights" under the patent."); *Ortho*, at 1030 ("Where a patentee makes an assignment of all significant rights under the patent, such assignee may be deemed the effective "patentee" under the statute and has standing to bring a suit in its own name for infringement."). All other licensees may bring suit against third parties only as a co-plaintiff with the patentee. *Fieldturf, Inc. v. Southwest Recreational Indus., Inc.*, 357 F.3d 1266, 1268 (Fed. Cir. 2004).

> To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well. . . . If the party has not received an express or implied promise of exclusivity under the patent, i.e. the right to exclude others from making, using, or selling the patented invention, the party has a "bare license," and has received only the patentee's promise that that party will not be sued for infringement.

*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995) (citations omitted).

For such an exclusive licensee to be held to have "all substantial rights" in a patent, the licensee must have all rights sufficient for the licensee or assignee to be "deemed the effective patentee under 35 U.S.C. § 281." *Sicom Systems, Ltd. v. Agilent Tech., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005); *see also Textile Prod.*, 134 F.3d at 1484 (holding that exclusive licensee holding all substantial rights in the patent "is in effect an "assignee" and therefore a patentee."). In determining "whether a patent transfer agreement conveys all substantial rights under a patent to a transferee or fewer than all those rights, a court must assess the substance of the rights transferred and the intention of the parties involved." *Intellectual Prop. Dev., Inc. v. Cablevision of California, Inc.*, 248 F.3d 1333, 1342 (Fed. Cir. 2001). The party claiming standing to enforce a patent bears the burden of providing evidence that it is endowed with substantial rights in the patent. *Fieldturf,* 357 F.3d at 1268.

Abbott argues that it is an exclusive licensee with all substantial rights under the License Agreement, as it has (1) "the right to enforce and litigate the Detergent Patent Rights" against Church & Dwight, *see* Hand Decl. Ex. A § 1.1, (2) the "right to grant sublicenses" to Church & Dwight, *id.*, and (3) the right to exclude Church & Dwight from practicing these patents because Inverness agreed that it would "not grant to [Church & Dwight] any license to the Detergent

Patents Rights without Abbott's consent." Abbott Reply 10, *quoting* Hand Decl. Ex. A § 1.4. In essence, Abbott claims that its license is exclusive with respect to Church & Dwight.

Church & Dwight, on the other hand, argues that the rights to enforce the patent and exclude others from using the patent granted under the License Agreement are very limited in scope. Church & Dwight begins by highlighting the language of the License Agreement:

> WHEREAS, ABBOTT desires to secure a royalty-free, fully paid, *non-exclusive* license to said Detergent Patent Rights for its manufacture and sale of lateral flow immunoassays worldwide; . . .
>
> 1.1. INVERNESS grants to ABBOTT a worldwide, royalty-free, fully paid, *non-exclusive*, irrevocable (except as expressly provided in Section 3.7 hereof) license with the right to grant sublicenses (subject to the restrictions in the following sentence) under the Detergent Patent Rights, including without limitation, the right to make, have made, use, sell, have sold, offer for sale, import and/or have imported the subject matter of the Detergent Patent Rights.

Hand Decl. Ex. A at 1-2 (emphasis added). In addition, Church & Dwight argues that Abbott has offered no evidence that Abbott received "Inverness' express or implied promise that others [would] be excluded from practicing the Detergent Patents," and states that Inverness has in fact licensed the Detergent Patents "to at least one third party subsequent to the execution of the License Agreement with Abbott." Church Opp'n 5.

Church & Dwight further claims that there is no evidence under the License Agreement that Abbott retains the exclusive license to enforce and sublicense the Detergent Patents, as that Agreement states that:

> ABBOTT's right to grant sublicenses is limited to sublicenses to third parties *solely as necessary to settle up to three (3) existing disputes* . . . . For clarity, the rights granted to ABBOTT in this Section 1.1 include the right to enforce and litigate the Detergent Patent Rights against the Permitted Sublicensees.

Hand Decl. Ex. A § 1.1 (emphasis added).  In sum, Church & Dwight argues that while Abbott has been granted some rights to sublicense the patents and exclude others from practicing the patents, these rights are so narrow in scope that Abbott cannot be deemed an exclusive licensee with substantial rights under the Detergent Patents.

The Court agrees with Church & Dwight.  Abbott has the right of veto over Inverness' right to further sublicense the Patents only insofar as the three existing disputes referred to in the Agreement have not been settled, Hand Decl. Ex. A § 1.1, and may itself only sublicense the patent as necessary to settle said disputes.  *Id*. at §§ 1.1, 1.4.  Finally, the language of the License Agreement itself, while not dispositive, indicates that the License was not intended to be exclusive.  Taking all these elements into account, it appears to the Court that Abbott has failed to meet its burden of proving that it is anything more than a non-exclusive licensee of the Detergent Patents.

Abbott's reliance on *Eyeticket Corp. v. Unisys Corp.*, 155 F. Supp. 2d 527 (E.D. Va. 2001), *Brunswick Corp. v. United States*, 22 Cl. Ct. 278 (Cl. Ct. 1991); *Pratt v. Whitney Co. v. United States*, 153 F. Supp. 409 (Cl. Ct. 1957) and *Western Electric Co. v. Pacent Reproducer Corp.*, 42 F.2d 116 (2d Cir. 1930) is unavailing.  In those cases, the courts found that licensees to whom less than full overall rights to a patent had been granted were nonetheless exclusive licensees, either because they had been granted full rights under the patent within a limited geographical area, *see Pratt & Whitney Co.*, at 410 ("A licensee under an exclusive license for a limited territory has the right to maintain an action, in the name of the patentee, for an unauthorized use of the patent within the territory covered by his license."), *citing Waterman v. Mackenzie*, 138 U.S. 252 (1890); *see also Eyeticket Corp.,* at 538("[C]ourts have long held than

an exclusive territorial license is equivalent to an assignment and may therefore confer standing upon the licensee to sue for patent infringement."), or because they had been granted full rights over the patent's use within a limited field of practice. *See Brunswick Corp.*, 22 Cl. Ct. at 283 (holding that corporation having acquired exclusive licensing rights for use of patent within a specific, limited, field was entitled to sue third party in its own name for patent infringement); *Western Electric*, 42 F.2d at 118 (holding that license granting exclusive rights to use patents within narrow field of use allows licensee to sue for patent infringement under its own name.).

Unlike the licensees in *Eyeticket*, *Brunswick, Pratt* and *Western Electric*, however, Abbott does not own full rights under the Detergent Patents in any geographical area or field of use. Its rights under the patents are in fact broadly constrained by the License Agreement. The cases cited by Abbott do not therefore compel the conclusion that Abbott is an exclusive licensee.

For the foregoing reasons, the Court finds that Abbott is not an exclusive licensee of the Detergent Patents, and does not hold "all substantial rights" with regards to those patents. Abbott thus does not have standing to counterclaim, in its own name, for Church & Dwight's alleged infringement of the Detergent patents. *See Rite-Hite*, 56 F.3d at 1551-52. Abbott's counterclaims under the Detergent Patents are therefore dismissed without prejudice. *Fieldturf*, 357 F.3d at 1269 ("ordinarily, dismissal for lack of standing is without prejudice.").

2. Abbott's standing to file its claims under the Detergent Patents by joining Inverness under Federal Rule of Civil Procedure 19.

Undeterred, Abbott argues that its lack of standing to file a counterclaim for infringement in its own name can be cured by joining Inverness under Federal Rule of Civil Procedure 19.

Abbott Br. 1-2. Abbott claims that since Inverness owns the Detergent Patents underlying Abbott's counterclaim against Church & Dwight, Inverness' presence in this litigation is necessary for complete relief among the parties. Abbott Br. 2. This Court disagrees.

The Federal Circuit has held that "[i]n the area of patent infringement . . . if the original plaintiff lacked . . . initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005); *see also Paradise Creations, Inc. v. U V Sales Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) ("[I]n order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit."). As established above, Abbott had no standing to assert claims of infringement of the Detergent Patents against Church & Dwight at the time it filed its counterclaim. It cannot now hope to remedy that lack of standing by joining Inverness. The Court therefore finds that Abbott may not join Inverness under Federal Rule of Civil Procedure 19.

**B.     Does Abbott have standing to sue for alleged patent infringements prior to September 30, 2003?**

In the alternative, Abbott claims that even if the Court were to find that it lacks standing to bring infringement claims under the Detergent Patents following the sale of said patents to Inverness, it nonetheless has standing to file such claims against Church & Dwight for alleged infringement of the patents prior to the sale to Inverness. Abbott Reply 8-9. This Court disagrees.

As highlighted by Church & Dwight, Abbott and Inverness entered into the Patent

Assignment Agreement on September 30, 2003, the same day the parties entered into the License Agreement.  That agreement stated, in part that:

> Assignor [Abbott] hereby sells, assigns, transfers, sets over and delivers to Assignee [Inverness], Assignor's entire right, title and interest in and to the Patents, the same to be held and enjoyed by said Assignee, its successors, permitted assigns or legal representatives, together with income, royalties, damages or payments due on or after the date hereof, including without limitation, all claims for damages or payments by reason of infringement or unauthorized use of the Patents, *along with the right to sue for past infringements and collect same for Assignee's sole use and enjoyment*.

Vinti Decl. Ex. A at 1 (emphasis added).

Abbott does not contest the validity of the Patent Assignment Agreement, nor does it argue that it is inapplicable to the case at bar.  The Court therefore finds that Abbott assigned its right to sue and collect for past infringements of the Detergent Patents, and, as a result, cannot now file claims for infringement of the Detergent Patents prior to September 30, 2003.  The Court thus finds that Abbott lacks standing to bring such claims.

### III. CONCLUSION

For the foregoing reasons, this Court grants Church & Dwight's cross-motion to dismiss and denies without prejudice Abbott's motion for leave to file an amended counterclaim and to join Inverness. Both parties' requests for attorneys fees are denied. An appropriate form of Order accompanies this Memorandum Opinion.

Dated October 18, 2006

                                                      s/ Garrett E. Brown, Jr.  
                                                     GARRETT E. BROWN, JR., U.S.D.J.