NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CHURCH & DWIGHT CO., INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-2142 (GEB) |
| ABBOTT LABORATORIES, | ) **MEMORANDUM OPINION** |
| Defendant. | ) |

**BROWN, Chief Judge**

  This matter comes before the Court upon Defendant Abbott Laboratories' ("Abbott" or "Defendant") Motion for Entry of Final Judgment under Rule 54(b), and Plaintiff Church & Dwight Co., Inc.'s ("Church & Dwight" or "Plaintiff") Cross-Motion to Dismiss Abbott's Counterclaim for Infringement of the Surmodic Patents.  The Court has decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the Court denies Abbott's motion and grants Church & Dwight's cross-motion.

**I. BACKGROUND**

  On April 20, 2005, Church & Dwight filed a complaint against Abbott, alleging willful infringement of Church & Dwight's immuno-assay test device patents.  *See* Compl. ¶¶ 11-25. On September 6, 2005, Abbott answered the Complaint, and filed a Counterclaim against Church & Dwight alleging infringement of the Detergent Patents and the Surmodics Patents.  Answer & Counterclaim 10-15.

On July 28, 2006, Abbott filed a Motion for Leave to File an Amended Counterclaim and to Join Inverness Pursuant to Federal Rule of Civil Procedure 19. Inverness owns the Detergent Patents. Abbott did not attempt to join SurModics, the owner of the Surmodics Patents. On August 7, 2006, Church & Dwight filed a Cross-Motion to Dismiss Abbott's Counterclaim of Infringement of the Detergent Patents. On October 18, 2006, the Court denied Abbott's motion to file an amended counterclaim and join Inverness, and granted Church & Dwight's cross-motion to dismiss.

On November 14, 2006 Abbott filed a motion for entry of final judgment under Federal Rule of Civil Procedure 54(b), seeking to have this Court's October 18, 2006 decision certified as a final judgment. On December 18, 2006, Church & Dwight filed its opposition to Abbott's Rule 54(b) motion, along with a cross-motion to dismiss Abbott's counterclaims for infringement of the Surmodics Patents.

## II.   DISCUSSION

### A.   Abbott's Motion for Entry of Final Judgment Under Rule 54(b)

Abbott requests that this Court enter a final judgment of dismissal with respect to Counts IV through VI of its Counterclaim. Those Counts allege infringement by Church of the Detergent Patents, and were dismissed by the Court for lack of standing. The Court will deny Abbott's request.

"Federal Rule of Civil Procedure 54(b) provides a mechanism for rendering a partial final judgment as to some, but not all, parties or claims in a single action." *Hill v. City of Scranton*, 411 F.3d 118, 124 (3d Cir. 2005), *citing Berckeley Inv. Group, Ltd. v. Colkitt*, 259 F.3d 135, 140 (3d Cir. 2001). In essence, "Rule 54(b) permits the district court to separate out final decisions

from non-final decisions in multiple party and/or multiple claim litigation in order to allow immediate appeal." *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 162 (3d Cir. 2005) (quotations omitted), *quoting Weiss v. York Hosp.*, 745 F.2d 786, 802 (3d Cir. 1984), *cert. denied,* 53 U.S.L.W. 3669 (U.S. Mar. 18, 1985) (No. 84-1187).

"A decision to certify a final decision under Rule 54(b) involves two separate findings: (1) there has been a final judgment on the merits, i.e., an ultimate disposition on a cognizable claim for relief; and (2) there is 'no just reason for delay.'" *Berckeley*, 455 F.3d at 202 (3d Cir. 2006), *quoting Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7-8 (1980). Among the factors to be considered in assessing whether a "just reason for delay" exists are the following:

> (1) the relationship between the adjudicated and unadjudicated claims;
> (2) the possibility that the need for review might or might not be mooted by future developments in the district court;
> (3) the possibility that the reviewing court might be obliged to consider the same issue a second time;
> (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final;
> (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Berckeley*, 455 F.3d at 203, *quoting Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975). Rule 54(b) "orders should not be entered routinely or as a courtesy or accommodation to counsel." *Panichella v. Penn. R.R. Co.*, 252 F.2d 452, 455 (3d Cir. 1958), *citing* 6 MOORE, FEDERAL PRACTICE, 264-65 (1953). In fact, such orders "should be used only 'in the infrequent harsh case' as an instrument for the improved administration of justice and the more satisfactory disposition of litigation in the light of the public policy indicated by statute and rule." *Panichella*, at 455; *see also DirecTV, Inv. v. Seijias*, No. 03-2429, 2004 U.S. Dist. LEXIS

28005, at *6 (D.N.J. May 13, 2004) ("[T]he Court should be mindful that requests for certification are not granted routinely, but rather only in the 'infrequent harsh case.'").

Abbott contends that is entitled to a Rule 54(b) entry of final judgment because this Court's October 18, 2006 order of dismissal was allegedly "an ultimate disposition of [the Detergent Patents] counterclaims insofar as the Court no longer needs to address any other issues related to those claims . . . ." Abbott Br. at 3.  Moreover, Abbott submits that there is no just reason for delaying Abbott's appeal of the dismissal of the Detergent Patent counterclaims, as those claims "are legally and factually separable from all of the remaining claims of patent infringement, invalidity and unenforceability." *Id.* at 4.  Finally, in an attempt to alleviate concerns over the waste of judicial resources a Rule 54(b) certification might entail, Abbott argues that an appeal of the dismissal of the Detergent Patents would result in a final resolution of the standing issues at the Federal Circuit level, and that the Federal Circuit would thus not be required to re-visit Abbott's standing argument. *Id.* at 5.

Church & Dwight, of course, takes exception to Abbott's characterization of the facts. Indeed, Church & Dwight contends that a Rule 54(b) certification at this juncture could conceivably lead the Federal Circuit to consider Abbott's standing argument anew. Church Opp'n at 9.  Church & Dwight argues in particular that if this Court's October 18, 2006 Order were to be reversed by the Federal Circuit – the Court of Appeals finding that Abbott did not hold all substantial rights to the Detergent Patents but that Abbott was nonetheless entitled to join Inverness – then Inverness would have the right, as an involuntarily joined necessary party, to relitigate the issue of standing with respect to the Detergent Patents. *Id.*  Any further dismissal

of the Detergent Patent counterclaims on standing grounds at the district court level could thus be brought once again, on appeal, before the Federal Circuit. *Id.*

In addition, Church & Dwight argues that Rule 54(b) certification here "would run contrary to the interests of sound and efficient judicial administration by introducing significant hurdles to a prompt resolution of the remaining claims at a time when discovery on those claims is in the late stages of discovery." *Id*. at 10. Indeed, Church & Dwight notes that fact discovery on the remaining claims and counterclaims is expected to be completed in the very near future. *Id.* at 10. Church & Dwight concludes that "[t]he introduction of entirely new claims and a new party (Inverness) would entail the need to engage in extensive discovery on the purported infringement, validity and enforceability of the Detergent Patents," when discovery in this matter should by now be drawing to an end. *Id.*

Finally, Church & Dwight contends that the balance of the equities weighs in favor of denying Abbott's motion for Rule 54(b) certification. *Id.* at 11. Church & Dwight submits that Abbott has failed to offer any evidence of harm it might suffer in the event its motion for certification were to be denied. *Id.* Church & Dwight argues that, by contrast, "the potential hardship to [Church & Dwight] is real and substantial," as "granting Abbott's motion for Rule 54(b) certification could substantially delay a trial on [Church & Dwight's] patent infringement claims." *Id.*

There is no doubt that this Court's October 18, 2006 Order constituted "a final judgment on the merits" under Federal Rule of Civil Procedure 54(b). *See Berckeley*, 455 F.3d at 202. Accordingly, there remains for this Court only to assess whether there is a "just reason" for the

delay a Rule 54(b) certification – and the appeal that is certain to follow – would necessarily entail. *Id.*

Taking into consideration the *Berckeley* factors applicable to this matter, the Court finds that while the Detergent Patent counterclaims could, in theory, be cleaved from the rest of Abbott's claims, to do so at this juncture would be impractical and wasteful. It is in the greater interest of judicial economy for this Court to deny the Rule 54(b) motion and press along with this case, particularly since fact discovery is now largely complete.[1] Moreover, the Court fails to see how the denial of its Rule 54(b) motion would harm Abbott.

Accordingly, this Court finds that this case is not the "infrequent harsh case" in which the grant of a rule 54(b) motion would dispose of litigation in a satisfactory manner "in the light of the public policy indicated by statute and rule." *Panichella*, 252 F.2d at 455. The Court will therefore deny Abbott's motion for a rule 54(b) certification.

> **B.    Church & Dwight's Cross-Motion to Dismiss Defendants' Surmodic Counterclaims**

Church & Dwight requests that this Court dismiss Defendant's Surmodics counterclaims, on the ground that Abbott lacks standing to sue for infringement of the Surmodics Patents and cannot cure its standing defect by moving to add Surmodics as an additional plaintiff. This Court agrees, and will grant Church & Dwight's cross-motion to dismiss.

---

[1] The Court notes that on October 11, 2006, Magistrate Judge Hughes stayed all discovery involving the Detergent Patents pending the outcome of Abbott's motion to join Inverness. Judge Hughes also ordered, on March 26, 2007, that all fact discovery concerning Church & Dwight's claims under the Charlton Patents and Abbott's claims under the Surmodics Patents be completed by May 31, 2007.

The central issue in the case at bar is whether the license granted to Abbott by Surmodics was such as to grant Abbott standing to sue for infringement of the Surmodics Patents. As this Court explained in its October 18, 2006 decision, 35 U.S.C. § 281 provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. "The term patentee includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." *Ortho Pharma. Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1030 (Fed. Cir. 1995), *cert. denied* 64 U.S.L.W. 3248 (U.S. Oct. 2, 1995) (No. 95-35) (quotations omitted), *quoting* 35 U.S.C. § 100(d). "A transfer of "title" to a patent – also called an assignment – is governed by 35 U.S.C. § 261." *Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000). That provision states, in part, that:

> Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.

35 U.S.C. § 261.

"Without the patentee as plaintiff, the remedies provided in the patent statute are unavailable except in extraordinary circumstances as where the patentee is the infringer, and cannot sue himself." *Ortho*, at 1030 (quotations omitted), *quoting Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891). The Federal Circuit has however "permitted an *exclusive licensee* to bring suit in its own name if the exclusive licensee holds *"all substantial rights"* in the patent." *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001) (emphasis added); *see also Textile Prod., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir.

1998) ("A licensee is not entitled to bring suit in its own name as a patentee, unless the licensee holds "all substantial rights" under the patent."); *Ortho*, at 1030 ("Where a patentee makes an assignment of all significant rights under the patent, such assignee may be deemed the effective "patentee" under the statute and has standing to bring a suit in its own name for infringement."). All other licensees may bring suit against third parties only as a co-plaintiff with the patentee. *Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1268 (Fed. Cir. 2004).

> To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well. . . . If the party has not received an express or implied promise of exclusivity under the patent, i.e. the right to exclude others from making, using, or selling the patented invention, the party has a "bare license," and has received only the patentee's promise that that party will not be sued for infringement.

*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995), *cert. denied*, 64 U.S.L.W. 3245 (U.S. Oct. 2, 1995) (No. 95-136) (citations omitted).

For such an exclusive licensee to be held to have "all substantial rights" in a patent, the licensee must have all rights sufficient for the licensee or assignee to be "deemed the effective patentee under 35 U.S.C. § 281." *Sicom Sys., Ltd. v. Agilent Tech., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005); *see also Textile Prod.*, 134 F.3d at 1484 (holding that exclusive licensee holding all substantial rights in the patent "is in effect an "assignee" and therefore a patentee."). In determining "whether a patent transfer agreement conveys all substantial rights under a patent to a transferee or fewer than all those rights, a court must assess the substance of the rights transferred and the intention of the parties involved." *Intellectual Prop. Dev., Inc. v. Cablevision of California, Inc.*, 248 F.3d 1333, 1342 (Fed. Cir. 2001), *cert. denied,* 70 U.S.L.W. 3240 (U.S.

Oct. 1, 2001) (No. 01-234) . The party claiming standing to enforce a patent bears the burden of providing evidence that it is endowed with substantial rights in the patent. *Fieldturf,* 357 F.3d at 1268.

In the case at bar, the license agreement between Abbott and Surmodics (the "Surmodics Agreement") for the rights to use the Surmodics Patents states, in relevant part:

> 2.01 SURMODICS hereby grants to ABBOTT a worldwide, exclusive license, with the right to grant sublicenses with SURMODICS' prior written approval, under PROPRIETARY RIGHTS to make, have made, use and sell LICENSED PRODUCTS for DIAGNOSTIC APPLICATIONS. Such exclusive license, with respect to patents included within PROPRIETARY RIGHTS, shall continue until the expiration of the last to expire of such patents, and with respect to unpatented aspects of PROPRIETARY RIGHTS, shall be perpetual.
>
> 2.02 ABBOTT shall inform SURMODICS in advance of ABBOTT's desire to grant sublicenses hereunder, the identity of the proposed sublicensee and the terms of the proposed sublicense. SURMODICS approval of such proposed sublicenses shall not be unreasonably withheld.

Declaration of Joshua D. Winneker ("Winneker Decl."), Ex. A.

Church & Dwight argues that Abbott has failed to allege that it has substantial rights to the Surmodics Patents, and concludes that "without joining Surmodics, Abbott's infringement claims, as pled, do not establish the requisite allegations to establish its standing to pursue those claims, and they should be dismissed as a matter of law." Church Opp'n at 12. Church & Dwight argues that the Court should view this alleged omission not only as a pleading defect, but also as a telling sign that Abbott does not, in fact, have substantial rights in the Surmodics Patents. Church Reply at 3-5.

Turning to the language of the Surmodics Agreement, Church & Dwight submits to the Court that Section 13.01 of the Agreement "states in no uncertain terms that Abbott may not freely assign its license." *Id.* at 6.  Indeed that section provides, in relevant part, that:

> [e]xcept where the assignee is a successor to substantially the entire business to which this license pertains, a party hereto must have the prior written consent from the other party in order to assign this Agreement in whole or in part.

Winneker Decl., Ex. A.

Moreover, Church Dwight insists that under Section 10.03 of the License Agreement, Abbott "does not have the 'sole' right to sue an infringer, since Surmodics has the right to bring suit in its own name if Abbott either (i) opts not to sue an infringer or (ii) does not exercise due diligence in an action that it instituted." Church Reply at 8.[2]  In light of the foregoing, and since "Abbott [allegedly] cannot settle any lawsuit without obtaining Surmodics' consent if Surmodics would receive less than a 2% royalty, nor . . . agree to any settlement terms without first meeting with Surmodics in good faith to determine 'mutually acceptable' terms," Church & Dwight concludes that Abbott cannot legitimately contend that it owns "all substantial rights" to the Surmodics Patents. Church Reply at 10, *citing* Winneker Decl. Ex. A, § 10.02(d),

---

[2]   Section 10.03 of the Surmodics Agreement states, in relevant part:

> if ABBOTT fails to proceed against such infringer within one hundred eighty (180) days after receipt of a written request by SURMODICS to do so, or if ABBOTT does not exercise due diligence in legal proceedings instituted pursuant to Article 10.02 within sixty (60) days after receipt of a written request by SURMODICS to do so, then SURMODICS, at its own discretion, shall have the right but not the obligation to prosecute the infringer by appropriate legal proceedings in the name of SURMODICS at SURMODICS' own expense.

Winneker Decl. Ex. A.

In the alternative, Church & Dwight submits that even if Abbott is an exclusive licensee with all substantial rights in the Surmodics Patents, it cannot cure its initial lack of standing because it has failed to join Surmodics in a timely manner. Church Reply at 13. Indeed, Church & Dwight contends that Abbott failed "to make any attempt to join Surmodics prior to the Court-imposed deadline for joining additional parties . . . ." Church Opp'n at 13. In support of its argument, Church & Dwight points to this Court's November 1, 2005 Pretrial Scheduling Order, which provided, in pertinent part, that "any motion to join new parties, whether by amendment or third-party complaint, must be filed no later than May 26, 2006 and made returnable on June 19, 2006." *Id.* at 13.[3] Church & Dwight concludes that "Abbott should be deemed to have waived any right it may have had to add Surmodics as an additional plaintiff . . . ." *Id.* at 14.

Denying all of Church & Dwight's allegations, Abbott steadfastly maintains that it is an exclusive licensee with all substantial rights in the Surmodics patents. Abbott argues, first, that its position is buttressed by the language of Article 10 of the License Agreement. Indeed, Abbott contends that the agreement "imposes an obligation on both Abbott and Surmodics to inform each other of potential infringement. Once those infringers are identified, Abbott has the sole right to prosecute 'in Abbott's own name.'" Abbott Opp'n at 11, *citing* Winneker Decl. Ex. A, §§ 10.01, 10.02.

In addition, Abbott claims that it must be deemed an exclusive licensee with substantial rights in the Surmodics Patents because Surmodics is allegedly not permitted to terminate the License Agreement "unless Abbott fails to perform under the [A]greement and does not remedy

---

[3]   The Court notes that under the Amended Scheduling Order issued by Judge Hughes on May 30, 2006, the deadline for filing motion to join new parties was extended to July 28, 2006.

that failure within 90 days," whereas Abbott, by contrast, "can terminate the agreement with 90 days notice." Abbott Opp'n at 11, *citing* Winneker Decl. Ex. A, §§ 8.01, 8.03. Furthermore, Abbott contends that it has the right to grant sublicenses. Indeed, while Abbott concedes that it must seek Surmodic's consent for sublicenses, it notes that the consent "cannot be unreasonably withheld." Abbott Opp'n at 11, *citing* Winneker Decl. Ex. A, §§ 2.01, 2.02.

Finally, Abbott argues that even if this Court were to find that it did not hold all substantial rights in the Surmodics Patents – and therefore did not have standing to sue for infringement of those patents – Abbott should be permitted to file a supplemental pleading joining Surmodics. Abbott Opp'n at 12. Indeed, Abbott contends that

> [g]ood cause exists to allow this amendment for three independent reasons: (1) discovery on the Surmodics Patents has been extensive, (2) the practical effect of the dismissal of these patents is a new lawsuit filed which would be inevitably consolidated with this one; and (3) [Church & Dwight] exhibited bad faith by waiting until this juncture to bring this motion.

*Id.* at 12-13.

Reviewing the parties' allegations and the language of the Surmodics Agreement, and drawing all inferences in favor of the non-moving party, this Court finds that Abbott does not hold "all substantial rights" to the Surmodics Patents.[4]  Indeed, the Court finds particularly

---

[4]   The parties disagree as to whether the issue of standing in this case should be reviewed under the standard of Federal Rule of Civil Procedure Rule 12(b)(1), or Rule 12(b)(6). Federal Rule of Civil Procedure 12(b) provides, in part, that:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
> (1) lack of jurisdiction over the subject matter . . .

compelling the evidence that Abbott is severely limited in its ability to assign its rights under the agreement, in its ability to sublicence the Patents, and in its ability to settle any dispute over the Patents.

The Court finds Abbott's argument in the alternative – i.e. that it should be allowed to amend its pleadings to join Surmodics – similarly unavailing. Abbott's lack of standing with respect to the Surmodics Patents could not be remedied by joining Surmodics. As this Court explained in its October 18, 2006 opinion, "[i]n the area of patent infringement . . . if the original

---

> (6) failure to state a claim upon which relief can be granted
> . . . .

FED. R. CIV. P. 12(b).

"Challenges to subject matter jurisdiction under Rule 12(b)(1) may be 'facial' or 'factual.'" *Talliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (citations omitted), *quoting Turicentro v. Am. Airlines*, 303 F.3d 293, 300 (3d Cir. 2002). When considering a factual attack to subject matter jurisdiction, such as the one at issue here, the Court "may look beyond the pleadings and make its own determination as to whether it has the power to hear the action." *Capitol First Corp. v. Todd*, No. 04-6439, 2006 U.S. Dist. LEXIS 93359, at *20 (D.N.J. Dec. 27, 2006).

In ruling on a motion for dismissal under Rule 12(b)(6), on the other hand, the Court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). In fact, "[a] Rule 12(b)(6) motion should be granted [only] if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *Id.* at 351, *quoting D.P. Enters., Inc. v. Bucks County Cmty. Coll.*, 725 F.2d 943, 944 (3d Cir. 1994) (quotations omitted).

Church & Dwight's submissions are unclear as to whether they seek dismissal of the Surmodics counterclaims under the 12(b)(1) or 12(b)(6) standard. That is, however, of little consequence, as the evidence in the case at bar compels this Court to grant Church & Dwight's motion even under the more stringent Rule 12(b)(6) standard.

plaintiff lacked . . . initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005); *see also Paradise Creations, Inc. v. U V Sales Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) ("[I]n order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit."). Since Abbott had no standing to assert claims of infringement of the Surmodics Patents against Church & Dwight at the time it filed its counterclaim, it cannot now hope to remedy that lack of standing by joining Surmodics.

Accordingly, the Court finds that Abbott does not have standing to sue for infringement under the Surmodics Patents.

### III.     CONCLUSION

For the foregoing reasons, the Court will deny Abbott's motion for certification under Rule 54(b) of this Court's Order of October 18, 2006, and will grant Church & Dwight's cross-motion to dismiss the Surmodics counterclaims. An appropriate form of Order accompanies this Opinion.


Dated: April 10, 2007

                                                        s/ Garrett E. Brown, Jr.
                                                        GARRETT E. BROWN, JR., U.S.D.J.