NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHURCH & DWIGHT CO., INC., | |
| Plaintiff, | |
| v. | Civil Action No. 05-2142 (GEB) |
| ABBOTT LABORATORIES, | **MEMORANDUM OPINION** |
| Defendant. | |

**BROWN, Chief Judge**

This matter comes before the Court upon Abbott Laboratories' ("Defendant" or "Abbott") Motion for Partial Summary Judgment that Plaintiff Church & Dwight Co., Inc. ("Plaintiff" or "Church & Dwight") is Not Entitled to an Award of Damages. The Court has reviewed both parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will deny Abbott's motion.

## I.     BACKGROUND

Church & Dwight owns U.S. Patent Nos. 5,714,389 (the "'389 Patent"), 5, 989, 921 (the "'921 Patent"), and 6,485,982 (the "'982 Patent") (collectively, the "Charlton Patents"). (C&D R. 56.1 Stat. ¶ 2; Abbott R. 56.1 Stat. ¶ 2.) The Charlton Patents were issued on February 3, 1998, November 23, 1999, and November 26, 2002, respectively. (C&D R. 56.1 Stat. ¶¶ 3-5; Abbott R. 56.1 Stat. ¶¶ 3-5.) Church & Dwight contends that it acquired the Charlton Patents in 2001 when it took control of the consumer products business of Carter-Wallace, Inc. ("Carter-Wallace"). (C&D R. 56.1 Stat. ¶ 1.)

From 1998 to September 2003, Abbott sold a line of products under the brand name Fact Plus. (C&D R. 56.1 Stat. ¶ 7; Abbott R. 56.1 Stat. ¶ 7.) Abbott ceased production of Fact Plus in September 2003 when it sold a branch of its operations to Inverness Medical Innovations ("Inverness"). (C&D R. 56.1 Stat. ¶ 7; Abbott R. 56.1 Stat. ¶ 7.) Church & Dwight contends that Abbott's Fact Plus products competed with its own products and infringed the '389, '921 and '982 Patents. (*See* Compl. ¶¶ 11-25.)

On April 20, 2005 Church & Dwight filed a complaint in this Court alleging infringement of the Charlton Patents. On June 5, 2007, Abbott filed its motion for partial summary judgment that Church & Dwight is not entitled to an award of damages.

## II.     DISCUSSION

### A.     STANDARD

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*,

811 F.2d 225, 231 (3d Cir. 1987).

 B. **APPLICATION**

Abbott contends that there remains no genuine issue of material fact (i) that Church & Dwight's claims of infringement of the Charlton Patents are precluded under the doctrine of laches, and (ii) that Church & Dwight's claims for damages for infringement of the '921 and '982 patents are barred for failure to comply with Section 287(a) of the Patent Act. Each contention will be analyzed in turn.

 1. The Doctrine of Laches

"The doctrine of prosecution laches is an equitable defense," and is applied at the discretion of the district court before which the issue is raised. *Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., L.P.*, 422 F.3d 1378, 1384-85 (Fed. Cir. 2005). "The laches defense has two underlying elements: first, the patentee's delay in bringing suit must be 'unreasonable and inexcusable,' and second, the alleged infringer must have suffered 'material prejudice attributable to the delay.'" *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289 (Fed. Cir. 2004), *citing A.C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992).

In essence, "laches may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution." *Symbol Techs,* at 1384-85. "The length of time that may be deemed unreasonable has no fixed boundaries, but rather depends on the circumstances of the case." *Ecolab, Inc. v. Envirochem*, *Inc.*, 264 F.3d 1358, 1371 (Fed. Cir. 2001), *quoting A.C. Aukerman*, at 1030. However, "[a] presumption of laches arises 'where a patentee delays bringing suit for more than six years after the date the patentee knew or should

3

have known of the alleged infringer's activity.'" *Intirtool,* 369 F.3d at 1297, *quoting Aukerman*, at 1028.

Abbott contends that Church & Dwight's "claim for damages for infringement of the '389 patent is presumptively barred by the doctrine of laches because claims for infringement were not filed until more than six years after [Church & Dwight] knew or should have known of the accused infringement." Def. Br. at 9. Abbott claims that when the '389 patent was issued in February 2, 1998, Abbott was already manufacturing and openly selling its Fact Plus product. *Id.* at 10. While Abbott concedes that it received a letter from Carter-Wallace about the '389 patent, Abbott maintains that it was merely "an informative letter to point out the patent's existence," and that it "stopped well short of accusing Abbott" of infringement. *Id.* Abbott in fact argues that Carter-Wallace's letter confirms that Church & Dwight and its predecessor were aware of the Fact Plus products in early 1998, yet only filed the Complaint in the case at bar six years later – an unreasonable amount of time that raises a presumption of laches. *Id.* at 10-11.

Abbott insists that Church & Dwight cannot overcome the presumption of laches with regard to the claim of infringement of the '389 patent. Indeed, Abbott contends that Church & Dwight (i) is unable to establish that the delay can legitimately be attributed to the litigation of any of the Charlton patents with other parties, since Abbott was never notified that Church & Dwight would seek to enforce the Charlton Patents against Abbott once such litigation came to an end, and (ii) cannot argue that its "negotiations" with Abbott justify the delay in prosecution, on the grounds that said negotiations were neither continuous nor bilateral. *Id.* at 11-12. Moreover, Abbott claims that there remains no genuine issue of material fact that it was prejudiced by Church & Dwight's delay in the prosecution of the '389 patent. In fact, Abbott

4

submits to the Court that it sold its relevant business to Inverness in September 2003, and "transferred significant amounts of evidence related to the Fact Plus product line to Inverness." *Id.* at 13.  Abbott concludes that as a result of this transfer, it is "at a significant disadvantage in defending this litigation." *Id.*

> Turning to the other two patents at issue, Abbott argues that:
>
> > [a]lthough the period of delay for each of the ['921 and '982] patents was less than the six years that presumptively bars a claim for damages on the '389 patent, the evidence of record nevertheless establishes that [Church & Dwight's] delay in filing claims of infringement of the '921 and '982 patents was unjustified and materially prejudicial to Abbott.

*Id.* at 19.  Abbott notes that "[t]he '921 patent issued in November of 1999 . . . [and that Church & Dwight] was evidently aware of Abbott's products in February of 1998 when it identified the '389 patent to Abbott and suggested Abbott may be interested in that patent" given its role in the relevant market.  *Id.* at 20, *quoting* Abbott R. 56.1 Stat. ¶ 12.  Yet, according to Abbott, Church & Dwight waited over five years to first bring forward its infringement argument.  Def. Br. at 20.

Similarly, Abbott contends that the '982 patent was issued in November 2002, and that a September 2001 letter from Carter-Wallace notifying Abbott that the '389 and '921 Patents, as well as the then soon-to-be-granted ''928 patent, were "available to Abbott for licensing," (Abbott R. 56.1 Stat. ¶ 17; C&D R. 56.1 Stat. ¶ 17), "establishes that [Church & Dwight] was diligently observing its patent rights with respect to Abbott's product line generally, and must have know [sic] about its alleged claim of infringement no later than the patent's issue date . . . ." *Id.* at 20.  Abbott concludes that Church & Dwight thus unreasonably waited over two years to put forth its infringement argument.

5

Finally, Abbott insists that the alleged delay in the prosecution of infringement of the '981 and '982 patents caused indisputable prejudice to Abbott, who, "[n]ot anticipating any claim of infringement of the Charlton patents . . . sold its Fact Plus business to Inverness and, along with that sale, transferred a substantial body of evidence relevant to a defense of the present infringement claims." *Id.* at 21.  Abbott concludes that it is entitled to summary judgment that the doctrine of laches applies to preclude Church & Dwight's claims of infringement of the Charlton patents.

Church & Dwight, not surprisingly, takes exception to Abbott's characterization of the underlying facts, and maintains that "there are disputed issues of material fact as to whether any delay was unreasonable and [whether] Abbott in fact suffered prejudice sufficient to sustain a finding of laches." Pl. Opp'n at 20-21.  Addressing first Abbott's contentions with respect to the '389 patent, Church & Dwight claims that Abbott cannot argue that the regular correspondence between the parties from February 27, 1998 onwards failed to put Abbott on notice of a potential infringement claim, while simultaneously maintaining that such correspondence establishes Church & Dwight's awareness of the potential infringement situation.  *Id.* at 21-22.  Church & Dwight adds that the prosecution of its '389 patent infringement claim was not *unreasonably* delayed because it was prosecuting that patent against other parties, and because Abbott was fully aware of that litigation.  *Id.* at 23-24.  Church & Dwight similarly maintains that the delays occasioned by settlement discussions between the parties were entirely reasonable, and that Abbott's claim that any discussions between the parties did not qualify as settlement negotiations is belied by the "details of the communications between the parties." *Id.* at 25-27.

As for the claim that the delay in prosecuting the '389 patent lead Abbott to suffer

6

"prejudice," Church & Dwight responds that Abbott was on notice of the potential infringement claims at the time of the sale to Inverness, and that Inverness has produced to Abbott all the documents it sought in its discovery requests. *Id.* at 29-30. Church & Dwight concludes that Abbott has suffered no prejudice as a result of any delay in prosecuting the '389 patent.

Turning to the '921 and '928 patents, Church & Dwight similarly argues that the length of the alleged delay is insufficient to call into question the presumption of laches discussed by the Federal Circuit in *Intirtool*. Church & Dwight concludes:

> Since no presumption of laches applies, Abbott is tasked with the burden of proving unreasonable or inexcusable delay and prejudice resulting from the delay. [Church & Dwight's] discussion above refutes these elements in terms of the ongoing negotiations with Abbott, its sequence of litigations against other infringers of which Abbott was aware, and Abbott's failure to demonstrate that it could not obtain the allegedly lost evidence from Inverness.

*Id.* at 33.

Viewing all the evidence in the light most favorable to non-movant, there remains a genuine issue of material fact as to whether Abbott suffered any prejudice as a result of its decision to sell its relevant business branch to Inverness prior to Church & Dwight's prosecution of the Charlton patents. Indeed, there remains a genuine issue of material fact as to whether any of the information it transferred to Inverness is now truly beyond the reach of Abbott under applicable discovery rules (in fact, Abbott does not claim that there are any documents that were in its custody before 2003 and that it cannot access now). *See* Def. Reply at 7.[1] For the

---

[1] Indeed, Abbott is reduced to arguing that: "[s]ubpoena or not, the essential undisputed fact is that Abbott ceded possession and control over documents to Inverness, thereby creating innumerable problems related to, for example, witness memory, custody, accuracy and authenticity of the documents." Def. Reply at 7.

foregoing reasons, there remains a genuine issue of material fact as to whether the doctrine of laches is applicable. Accordingly, the Court will deny Abbott's motion for summary judgment that Church & Dwight's claims of infringement of the '389 patent and its claims for damages under the '921 and '982 patents are barred by the doctrine of laches.

2. The Patent Act's Marking Requirement

Abbott also claims that it is entitled to summary judgment that Church & Dwight's claims for damages for infringement of the '921 and '982 patents are barred for failure to comply with Section 287(a) of the Patent Act. The Court disagrees.

Section 287(a) of the Patent Act provides as follows:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a); *see also Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1350 ( Fed. Cir. 2006) (Section 287 "permits damages only when the infringing articles are marked or the infringer is on notice of infringement."). "The purpose of [Section 287's] notice requirement is to ensure that the accused infringer is aware of the patent during the period in which liability arises and damages accrue." *Sunbeam Prods. v. Wing Shing Prods. (BVI) Ltd.*, 153 Fed. App'x 703

8

(Fed. Cir. 2005), *cert. denied*, 546 U.S. 1095 (Jan. 9, 2006) (No. 05-667).

> [N]otice must be of 'the infringement,' not merely notice of the patent's existence or ownership. Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device . . . It is irrelevant . . . whether the defendant knew of the patent or knew of his own infringement. The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer.

*Amsted Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178, (Fed. Cir. 1994), *citing American Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 n.18 (Fed. Cir. 1993).

Abbott contends that "[i]t is beyond any reasonable dispute that [Church & Dwight] did not mark any of its . . . pregnancy test kits with the '921 or '982 Charlton patents," and in fact submits to the Court that "[n]one of [Church & Dwight's] product labels or actual product samples in the record is marked with *any* of the asserted Charlton patents." Def. Mot. at 15 (emphasis in original). Abbott claims that under the statute Church & Dwight should not be allowed to recover damages for any infringement prior to the date of notice, and that since Church & Dwight has allegedly failed to meet its burden of proof of establishing notice, it "should be precluded from recovering all claimed damages in this case." *Id.* Indeed, Abbott contends that the letters sent by Carter-Wallace and Church & Dwight to Abbott do not amount to "notice" under Section 287. *Id.* at 18-19.

Church & Dwight appears to concede that its products were not marked, but responds that Abbott's motion fails in relation to the '921 and '982 patents because Abbott has made no showing that any product claims present in either of those two patents cover any product sold by Church & Dwight. Pl. Opp'n at 5-6. Church & Dwight submits to the Court that "[h]aving

9

failed to establish any obligation to mark, Abbott has failed to make even a *prima facie* showing in relation to the '921 and '982 patents of entitlement to partial summary judgment for failure to mark under § 287." *Id.* at 6 (emphasis in original). Indeed, Church & Dwight contends that it has "no duty to mark under 35 U.S.C. § 287(a) because [it] does not produce or sell a product covered by the patents-in-suit." *Id.* at 6.

In the alternative, Church & Dwight argues that even if it did have "an obligation to mark its products, Abbott had actual notice of [Church & Dwight's] claim of infringement." *Id.* at 12. In particular, Church & Dwight argues that its "notice letters sent in 1998 and 2001 were more than sufficient to place Abbott on actual notice of infringement of the three Charlton Patents," and concludes that "Abbott cannot prevail on [its motion] because there is evidence establishing actual notice which, at the very least, is sufficient to establish a genuinely disputed issue of fact." *Id.* at 12, 20.

Reviewing all allegations in the light most favorable to the non-movant, there remains a genuine issue of material fact as to whether any of Church & Dwight's products are covered by the Charlton patents, and thus, whether they need to be marked under Section 287. Moreover, there remains a genuine issue of material fact as to whether Abbott received proper notice under Section 287 such that Church & Dwight may recover damages for any alleged infringement of the '921 and '982 patents. Indeed, the September 2001 letter from Carter Wallace to Abbott – enclosing copies of the '389 and '921 patents as well as the pending claims of what became the '982 patent – specifically stated that "it is very difficult for anyone to sell visually readable lateral flow test strips without infringing one or more of the Carter Wallace, Inc. patents." Declaration of James Richter ("Richter Decl.") Ex. J.

Accordingly, the Court will deny Abbott' motion for summary judgment that Church & Dwight's claims for damages for infringement of the '921 and '928 patents are barred for failure to comply with Section 287(a) of the Patent Act.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion for summary judgment. An appropriate form of Order accompanies this Opinion.

Dated: July 5, 2007

                                                                             s/ Garrett E. Brown, Jr.
                                                                          GARRETT E. BROWN, JR., U.S.D.J.