<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | : | |
|---|---|---|
| CHURCH & DWIGHT CO., INC. | : | Civ. No. 05-2142 (GEB) (JJH) |
| | : | |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| ABBOTT LABORATORIES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon the motion of plaintiff Church & Dwight Co., Inc. ("C&D") for Enhanced Damages (Docket No. 261). The Court has decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reason set forth below, the Court grants C&D's motion.

**I.   BACKGROUND**

This case involves three patents owned by Church & Dwight Co., Inc. ("C&D") related to over the counter pregnancy tests: U.S. Patent Nos. 5,714,389 ("the '389 Patent"), 5,989,921 ("the '921 Patent"), and 6,485,982 ("the '982 Patent") (collectively, the "Charlton Patents"). The Charlton Patents were issued on February 3, 1998, November 23, 1999, and November 26, 2002, respectively. C&D alleged that from 1998 to September 2003, Abbott infringed the Charlton Patents by selling a line of products under the brand name Fact Plus (the "Accused Products"). Three companies manufactured the Accused Products sold by Abbott: Abbott, Wyntek and ABI. C&D alleged that the products manufactured by Abbott, Wyntek and ABI infringed claims 1, 5,

6, 7, and 10 of the '389 Patent; claims 8 and 9 of the '921 Patent; and claims 7 and 19 of the '982 Patent. C&D also alleged that the ABI-manufactured test infringed claim 9 of the '389 Patent.

A trial was held from January 17, 2008 to February 15, 2008. The jury found that C&D proved by a preponderance of the evidence that Abbott literally infringed, contributed to the literal infringement of, or induced literal infringement of the Charlton Patents as alleged by C&D. Moreover the jury found that Abbott had not proven by clear and convincing evidence that any of the claims at issue were invalid. The jury also found that C&D showed by a preponderance of the evidence that it was entitled to recover: (1) lost profits in the amount of $10,250,000.00; and (2) a reasonable royalty of $4,350,000.00 for infringing sales. Finally, the jury found that C&D proved by clear and convincing evidence that the infringement was willful. On March 7, 2008, C&D filed the present motion.

## II.     DISCUSSION

### A.     Standard of Review

The Court "may increase the damages up to three times the amount found or assessed" when there is a willful infringement finding. 35 U.S.C. § 284; In re Seagate Tech., LLC, 497 F.3d 1360 (Fed. Cir. 2007). Seagate held that willful infringement required at least a showing of objective recklessness. Seagate, 497 F.3d at 1371.[1] The Federal Circuit has stated that "[u]pon a finding of willful infringement, a trial court should provide reasons for not increasing a damages award." Jurgens v. CBK, Ltd., 80 F.3d 1566, 1572 (Fed. Cir. 1996).

In considering enhanced damages, "the paramount determination . . . is the egregiousness

---

[1] Prior to Seagate, willfulness could be proven by a showing "more akin to negligence." Seagate, 497 F.3d at 1372.

of the defendant's conduct, based on all the facts and circumstances." Read Corp. v. Portec, Inc., 970 F.2d 816, 826 (Fed. Cir. 1992). The Federal Circuit has identified several factors for courts to consider in making the determination regarding enhanced damages:

> "(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; . . . (3) the infringer's behavior as a party to the litigation;" (4) "defendant's size and financial condition;" (5) "closeness of the case;" (6) "duration of defendant's misconduct;" (7) "remedial action by the defendant;" (8) "defendant's motivation for harm;" and (9) "whether defendant attempted to conceal its misconduct."

Liquid Dynamics Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1225 (Fed. Cir. 2006) (quoting Read Corp. v. Portec. Inc., 970 F.2d 816, 826-27 (Fed. Cir. 1992)).

**B.    Court's Analysis**

**1.    Willfulness Finding**

As discussed above, the jury in this case found that C&D proved by clear and convincing evidence that Abbott's infringement was willful. Abbott argues that enhanced damages are not appropriate because its infringement was not willful as a matter of law. For the reasons discussed in the Court's Memorandum Opinion on Abbott's Motion for Judgment as a Matter of Law that the Asserted Claims are Invalid, Not Infringe or Willfully Infringed, and that Plaintiff is Not Entitled to an Award of Damages ("JMOL"), which accompanies this opinion, the Court will not overturn the jury's willfulness finding.

Abbott also argues that the jury's willfulness finding was somehow limited by a jury question. During deliberations, the jury asked whether, "with regard to the willfulness issue . . . the jury need[s] to consider the entire damages period or just a portion of the period." (Feb. 15,

2008 Tr. at 3:4-12.) Abbott contends that "the question itself indicated that the jury did not believe willfulness had been proved for the entire damages period." (Abbott Opposition Br. at 8.) Abbott's position is entirely without merit. The jury's verdict was in no way limited by the jury's question itself. In fact, the jury's verdict "must be taken as the sole embodiment of the jury's act" and must "stand irrespective of what led up to it in the jury room." 8 Wigmore on Evidence § 2348 (1961).

### 2. The Totality of the Circumstances

For the reasons discussed below, the Court concludes that the totality of the circumstances weighs in favor of enhanced damages in this case. The Court concludes that seven of the Read factors weigh in favor of enhanced damages, and two weigh against enhanced damages.

#### a. Whether Abbott Deliberately Copied the Ideas or Design

The Court finds that this factor weighs slightly in favor of enhanced damages. The Federal Circuit has stated that the "ideas" and "design" referenced in this factor "would encompass, for example, copying the commercial embodiment, not merely the elements of a patent claim." Read Corp. v. Portec, Inc., 970 F.2d 816, 827 n.7 (Fed. Cir. 1992), abrogated in part on other grounds by Markman v. Westview Instruments, Inc., 52 F.3d 967, 975 (Fed. Cir. 1995) aff'd by 517 U.S. 370 (1996). While C&D has not referenced any direct evidence that Abbott copied its commercial embodiment, it has presented sufficient circumstantial evidence to support an inference that Abbott copied the idea of a test strip in a housing. First, there is no evidence indicating that Abbott had independently developed a complete device which included the housing. (Jan. 28, 2008 a.m. Tr. at 72:1-16, 80:21-81:2.) The evidence indicates that Abbott

first introduced a consumer test comprised of a strip within a housing only after products by Unilever and Carter-Wallace (both of which were utilizing the Charlton Patents) were on the market. Dr. Gordon, one of the scientists that helped develop Abbott's product, admitted that he saw Unilever's product approximately one year prior to Abbott's first sale of a product involving a strip contained within housing. Therefore, the Court concludes that there is sufficient evidence to support an inference that Abbott copied the idea (the commercial embodiment) of putting a test strip in a housing.

Abbott contends that it could not have copied the Charlton Patent claims because Abbott had already been selling its products for eight years by the time the first Charlton Patent, the '389 Patent, issued in 1998. But Abbott has not pointed to any evidence supporting a finding that these early products had a test strip within a housing.

        **b.    Whether Abbott, When it Knew of The Patent Protection, Investigated the Scope of the Patent and Formed a Good-faith Belief That it Was Invalid or That it Was Not Infringed**

The Court concludes that this factor weighs in favor of awarding enhanced damages. C&D argues that the jury's willfulness finding "seals the fact that Abbott did not form a good faith belief that the Charlton Patents were invalid, unenforceable, or not infringed." Abbott contends that courts post-<u>Seagate</u> have held that a finding of willful infringement does not itself justify enhancement of damages. Abbott also argues that it independently created its Fact Plus products and obtained patents covering that and related technology and that these facts weigh in favor of Abbott's good faith. Abbott states that "[a]t C&D's invitation in 1998, Abbott in good faith began licensing discussions." Abbott also points out that it asked for and received assurances from Wyntek and ABI that the products being made by those entities did not infringe

5

any third party patents.  Additionally, Abbott argues that its laches defense bars an award of enhanced damages.

The Court concludes that the jury's willfulness finding precludes a finding that Abbott had a good faith belief either that it was not infringing the Charlton Patents or that they were invalid.  Although Abbott correctly notes that a willfulness finding does not require enhanced damages, it is certainly a factor in the Court's decision regarding enhanced damages.

### c. Abbott's Litigation Behavior

Although the Court believes that Abbott's counsel are very talented and conducted themselves professionally, the Court's analysis of this factor focuses on the objective reasonableness of the contentions put forth during this litigation.  See Hoechst Celanese Corp. v. BP Chemicals Ltd., 846 F. Supp. 542, 548 -549 (S.D. Tex. 1994) (focusing on reasonableness of counsel's arguments, not the professionalism and talent), aff'd, 78 F.3d 1575 (Fed. Cir. 1996).  For many of the reasons discussed in the Court's JMOL opinion, the infringement and invalidity defenses were not very strong.  In particular, Abbott's invalidity defenses, which had previously been rejected by the USPTO and by another federal jury, were weak.  Moreover, the written description and best mode defenses were not strong and were not argued in Abbott's closing.  Abbott also did not contest the infringement of the '982 Patent at trial, despite litigating the issue beforehand.

Additionally, in its post-trial motions, Abbott has adopted a "shotgun" approach of litigating virtually every conceivable issue, thereby burdening the Court with a number meritless arguments.  For example, as discussed above, Abbott made the frivolous argument that the Court should limit the jury's verdict on the basis of the language of a question submitted to the Court

from the jury during deliberations. Abbott also made numerous unsupported arguments regarding the jury instructions in its separate motion for a new trial.

For these reasons, the Court concludes this factor weighs somewhat in favor of enhancement.

### d. Abbott's Size and Financial Condition

The Court concludes that this factor weighs in favor of enhanced damages. Abbott is a large and financially sound company. Abbott does not dispute that is listed on the New York Stock Exchange and has a market capitalization of about $80 billion. Abbott reported revenues of $25.9 billion in 2007. Over the course of its infringement, Abbott sold many millions of dollars of infringing product. Moreover, it sold its diagnostics business, which included the infringing products for $92 million. For these reasons the Court concludes that enhanced damages would not irreparably harm Abbott and would likely provide an enhanced deterrent effect.

Abbott contends that its financial status should be offset by the fact that it has not been in the OTC pregnancy test kit market for over four years. However, the Court sees no reason to reward Abbott simply because it sold the infringing portions of its business prior to this litigation.

### e. The Closeness of the Case

The Court concludes that this factor weighs in favor of enhanced damages, but only slightly. For the reasons discussed in the Court's JMOL opinion, the infringement defenses were not strong. Likewise, the invalidity defenses were not convincing. However, these arguments were not entirely without merit. Therefore, the Court concludes that this factor weighs somewhat in favor of enhanced damages.

### f.  The Duration of Abbott's Misconduct

The Court concludes that this factor also weighs in favor of enhanced damages. Abbott infringed the Charlton Patents for more than four years after C&D first notified it of infringement.

Abbott argues that it sold its products for eight years prior to the first Charlton patent issued and that it need not cease manufacturing to avoid a willfulness finding. The Court does not find this argument persuasive; it goes to the jury's willfulness finding, which this Court will not overturn. Abbott also argues that its sales after being given notice that it was infringing are not evidence of misconduct, but the Court disagrees. Willful infringement is misconduct. Abbott's citation to Tristrata Technology, Inc. v. ICN Pharmaceuticals, Inc., 314 F. Supp. 2d 356, 361 (D. Del. 2004) is not persuasive, because in that case, after the infringing party received a letter from the patent holder accusing its product of infringement, the infringing party discontinued manufacture and sale, albeit for reasons other than possible infringement. Here, Abbott continued to infringe for four years. Finally, the Court rejects Abbott's argument that the "limited finding of willfulness is highly relevant" to this factor, because, as discussed above, the jury's willfulness finding was not "limited."

### g.  Remedial Action by Abbott

The Court concludes that this factor weighs slightly against enhanced damages. It is undisputed that at the time that C&D sued Abbott, Abbott was no longer selling the infringing products. Other courts have analyzed "the relevant time for remedial action [to be when the infringing party] learned of the lawsuit." nCUBE Corp. v. SeaChange Intern., Inc., 313 F.Supp.2d 361, 390 (D. Del. 2004). Thus, if this Court only considers the time after the

commencement of the suit to be the relevant time period, this factor would counsel against enhanced damages. However, C&D argues that Abbott did not take remedial action for over four years, despite being on notice of its infringement. Considering these facts, the Court concludes that this factor weighs slightly against enhanced damages.

### h. Abbott's Motivation for Harm

The Court concludes that this factor weighs in favor of enhanced damages. While Abbott argues that mere ordinary competition does not satisfy this factor, willful infringement by a direct competitor in a competitive market when the infringer did not have a strong basis to believe that the patents were invalid, does. See, e.g., nCube Corp., 313 F. Supp. 2d at 390.

### i. Whether Abbott Attempted to Conceal its Misconduct

The Court concludes that this factor weighs against enhanced damages. Both parties agree that Abbott's products were sold openly. C&D argues that Abbott attempted to conceal evidence relating to rights it had in a patent not owned by C&D. The Court does not find this alleged concealment relevant to the inquiry of whether Abbott attempted to conceal its infringement of the Charlton Patents.

### 3. Amount of Enhancement

C&D seeks to treble the damages. Abbott argues that treble damages would be an unjustified windfall for C&D. Abbott argues that C&D's enhanced damages request must be viewed in the context of the damages award in this case and license agreements that C&D has entered into with others. Abbott contends that C&D never received more than a 5-6% royalty for the license agreements it entered and that the jury's award amounts to 14.6% of Abbott's sales of the infringing products. Abbott categorizes this as a windfall and claims that treble damages

would only increase the windfall.

C&D claims that treble damages would not be an unfair windfall because the parties that had licenses "(i) did not willfully infringe, (ii) settled well before trial and, (iii) (with the exception of Pfizer's one-year limited 'license' reached as part of a settlement) did not sell into the OTC market in which C&D competes." (C&D Reply Br. at 11.)

The Court is unconvinced by Abbott's argument regarding the need to view its willful infringement in light of the royalty payments made by other companies. There is simply no evidence that these other companies willfully infringed the Charlton patents. Moreover, the potential for an infringing party to be liable for an amount greater than the royalties it would have paid under a negotiated license agreement, helps to encourage such agreements and to deter litigation.

The Court, in its discretion and in consideration of the above factors, concludes that the damages will be enhanced by a factor of two.

### III.  CONCLUSION

For the foregoing reasons, C&D's motion for enhanced damages (Docket No. 261) is granted.

Dated:  June 23, 2008


                                          s/ Garrett E. Brown, Jr.
                                          GARRETT E. BROWN, JR., U.S.D.J.