<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CHURCH & DWIGHT CO., INC. | : | Civ. No. 05-2142 (GEB) (JJH) |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| v. | : |  |
| ABBOTT LABORATORIES, | : |  |
| Defendant. | : |  |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon the motion of defendant Abbott Laboratories ("Abbott") for a new trial (Docket No. 254). The Court has decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reason set forth below the Court denies Abbott's motion.

**I.     BACKGROUND**

This case involves three patents owned by Church & Dwight Co., Inc. ("C&D") related to over the counter pregnancy tests: U.S. Patent Nos. 5,714,389 ("the '389 Patent"), 5,989,921 ("the '921 Patent"), and 6,485,982 ("the '982 Patent") (collectively, the "Charlton Patents"). A trial was held from January 17, 2008 to February 15, 2008. The jury found that C&D proved by a preponderance of the evidence that Abbott literally infringed, contributed to the literal infringement of, or induced literal infringement of the Charlton Patents as alleged by C&D. Moreover, the jury found that Abbott had not proven by clear and convincing evidence that any of the claims at issue were invalid. The jury also found that C&D showed by a preponderance of

the evidence that it was entitled to recover: (1) lost profits in the amount of $10,250,000.00; and (2) a reasonable royalty of $4,350,000.00 for infringing sales. Finally, the jury found that C&D proved by clear and convincing evidence that the infringement was willful.

Abbott filed the present motion on March 7, 2008. Abbott argues that to the extent the Court does not grant Abbott's Motion for Judgment as a Matter of Law that the Asserted Claims are Invalid, not Infringed or Willfully Infringed, and that Plaintiff is not Entitled to an Award of Damages ("JMOL"), it should grant Abbott a new trial pursuant to Federal Rule of Civil Procedure 59. The Court denied Abbott's JMOL for the reasons explained in the separate Memorandum Opinion addressing that motion.

## II.   DISCUSSION

### A.   Standard on a Motion For A New Trial

"Rule 59(a) of the Federal Rules of Civil Procedure allows a party to seek relief from a judgment by filing a motion for a new trial." Winnicki v. Bennigan's, No. 01-3357, 2006 U.S. Dist. LEXIS 61206, at *2 (D.N.J. Aug. 28, 2006). "Grounds upon which a new trial may be granted include: 1) that the verdict is against the weight of the evidence; 2) that the damages are excessive; or 3) that the district court made substantial errors in the admission or rejection of evidence or in its instructions to the jury." Id. at *3 (citing Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)). The district court has discretion on whether or not to grant a new trial. Winnicki, at *2 (citing Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1017 (3d Cir. 1995)).

"New trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict,

on the record, cries out to be overturned or shocks our conscience." Vargo v. Coslet, 126 Fed. Appx. 533, 534 (3d Cir. 2005) (quoting Klein v. Hollings, 992 F.2d 1285, 1290 (3d Cir. 1993)). "Unless justice requires otherwise, no error in admitting or excluding evidence--or any other error by the court or a party--is ground for granting a new trial." FED. R. CIV. P. 61. "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Id.  Moreover, Courts in this Circuit have held that "a party who fails to object to errors at trial waives the right to complain about them following trial." Waldorf v. Shuta, 142 F.3d 601, 629 (3d Cir.1998). "[A] party seeking to alter a judgment based on erroneous jury instructions must establish that (1) it made a proper and timely objection to the jury instructions, (2) those instructions were legally erroneous, (3) the errors had prejudicial effect, and (4) it requested alternative instructions that would have remedied the error." NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1311-12 (Fed. Cir. 2005); see also Stryker Trauma S.A. v. Synthes (USA), No. 01-cv-3879 (JLL), 2007 WL 1959233, at *2 (D.N.J. June 29, 2007).

    **B.**    **Abbott's Arguments**

First, Abbott argues that the Court made erroneous claim constructions on the three Charlton Patents. Second, Abbott argues that the jury's finding of infringement is against the weight of the evidence, and that the jury instructions and several evidentiary rulings prejudiced Abbott. Third, Abbott argues that the jury's finding of willful infringement is against the weight of the evidence, and that the jury instructions and several evidentiary rulings related to willful infringement were prejudicial to Abbott. Fourth, Abbott argues that the jury's finding of lost profits is against the weight of the evidence, and that the jury instructions and several evidentiary

rulings related to damages were prejudicial to Abbott.  Fifth, Abbott argues that the jury's finding on invalidity is against the weight of the evidence, and that the jury instructions and several evidentiary rulings related to invalidity were prejudicial to Abbott.  Finally, Abbott contends that the equitable defenses of inequitable conduct and laches should have been presented to the jury.

  **C.**  **The Court's Analysis**

    **1.**  **Claim Construction**

  The Court held a two-day hearing for claim construction purposes from August 1, 2007 to August 2, 2007.  On August 28, 2007, the Court issued a Markman Order, construing the contested terms.  Abbott filed no motion for reconsideration and the time for such a motion has long passed.  See L.R. CIV. P. 7.1(i).  Abbott now seeks to reargue claim construction under the guise of a motion for a new trial.  Abbott's arguments are repetitious of the arguments it made prior to the Court's claim construction ruling.  (Abbott Br. 1-5.)

  In light of the Court's prior consideration of and ruling on Abbott's arguments (Docket Nos. 97-101), the Court concludes that Abbott has failed to show that the Court's claim construction was legally erroneous.  Thus, a new trial will not be granted on these grounds.

    **2.**  **Infringement**

  Abbott argues that the jury's finding of infringement is against the weight of the evidence, and that the jury instructions and several evidentiary rulings prejudiced Abbott.   For the reasons more fully described in the Memorandum Opinion on Abbott's JMOL, the Court concludes that there is nothing in the record to support the conclusion that the jury's verdict on infringement shocks the conscience or that the evidence in this regard overwhelmingly favors Abbott.

The Court also rejects Abbott's argument that the jury instructions on infringement were improper. The contested instruction reads as follows: "In analyzing infringement, you are limited by the metes and bounds of the claims. On the other hand, and inventor is not necessarily limited to the precise embodiment that he discloses." (Feb. 14, 2008 a.m. Tr. at 12:12-15.) Abbott contends that this instruction is incorrect in light of Phillips v. AWH Corp., 415 F.3d 1303, 1323-24 (Fed. Cir. 2005). The Court disagrees. The instruction is an accurate statement of the law. Moreover, it is consistent with Phillips. In Phillips, the Federal Circuit stated that it has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." 415 F.3d at 1323.

Abbott next argues that the Court improperly allowed Dr. Nazareth, a C&D employee, to provide expert opinion testimony and to discuss products not at issue in this case. Abbott also alleges that C&D's infringement expert improperly relied on Dr. Nazareth's expert opinion. Additionally, Abbott claims that the Court improperly precluded Abbott from presenting Mr. Gerald Mossinghoff to testify about the prosecution of the Charlton Patents before the USPTO. The Court disagrees on all points. The Court reviewed the transcript and found that Dr. Nazareth provided factual testimony, and that the Court properly limited his testimony by sustaining Abbott's objection at least once. (Jan. 22, 2008 a.m. Tr. at 79, 85-87; Jan 22, 2008 p.m. Tr. at 17.) Additionally, the record establishes that C&D's infringement expert merely relied on Dr. Nazareth to familiarize himself with the C&D product. No evidence indicates that the expert acted in reliance on Dr. Nazareth's alleged opinions regarding infringement. (Jan. 24, 2008 a.m. Tr. at 50-52). Finally, the Court was within its discretion when it precluded Mr. Mossinghoff from testifying on patent law and procedure. In any event, Abbott has not demonstrated that these

5

purported evidentiary errors were harmful, especially in light of Abbott's numerous speaking objections, some of which were sustained, and Abbott's opportunity for cross examination.

### 3.     Willful Infringement

Abbott next argues that the jury's finding of willful infringement is against the weight of the evidence, and that the jury instructions and several evidentiary rulings related to willful infringement were prejudicial to Abbott.  For the reasons more fully described in the Memorandum Opinion on Abbott's JMOL, the Court concludes that the jury's verdict on willful infringement does not shock the conscience and the evidence in this regard does not overwhelmingly favor Abbott.

The Court also rejects Abbott's argument regarding the willful infringement jury instructions.  Abbott argues that the Court's instructions did not fully reflect the law on willfulness and that the Court should have given a number of additional instructions that were proposed by Abbott.  In the jury instructions, the Court properly quoted the willful infringement standard from In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  The instructions Abbott claims should have been given are unnecessary for a wilfulness determination under Seagate.  In any event, Abbott has failed to show that any error in this regard was harmful.

Abbott also contends that in response to the jury's question about the proper time frame in which to consider willful infringement, the Court should have requested that the jury specify the periods for which they were considering willfulness.  The Court concludes that this was not necessary, and that the Court's response to the jury was well within its discretion.  Moreover, Abbott waived any objection to the original verdict form by acquiescing in it.  See Hoechst Celeanese v. BP Chems. Ltd., 78 F.3d 1575, 1581 (Fed. Cir. 1996) (a party "by its acquiescence

6

in and indeed by its proposal of the verdict form waived objection to the verdict form"). Moreover, Abbott has not shown prejudice that would justify a new trial.

Abbott argues that the Court permitted Stephen Shear to testify about issues that only related to Abbott's laches defense and that this was confusing to the jury and prejudicial to Abbott. Abbott does not direct the Court to any such testimony to which it objected. Thus, the Court concludes that Abbott waived this argument.

Abbott also contends that C&D should not have been permitted to question any witness regarding two documents: DTX 376 and PTX 43. With respect to DTX 376, Abbott contends that the jury may have improperly believed that Abbott knew it was infringing C&D's rights, despite the fact that DTX 376 relates only to rights in the Charlton patents held by a third company. Similarly, Abbott contends that PTX 43 may have been improperly understood by the jury to imply that Abbott knew of an "objectively high likelihood" of infringement. The Court rejects Abbott's arguments, because Abbott did not timely make this objection and thereby waived these arguments. Moreover, Abbott did not object to these documents being admitted into evidence and has failed to show that it was prejudiced. Indeed, Abbott had full opportunity to examine the relevant witnesses.

    **4. Damages**

Abbott argues that the jury's finding of lost profits is against the weight of the evidence, and that the jury instructions and several evidentiary rulings related to damages were prejudicial to Abbott. For the reasons more fully described in the Memorandum Opinion on Abbott's JMOL, the Court concludes that there is nothing in the record to support the conclusion that the jury's verdict on damages were excessive. Moreover, the damages do not shock the conscience.

Abbott next makes a series of meritless objections to the jury instructions.

Abbott makes a baseless objection to the following instruction: "In proving damages, the patent owner's burden of proof is not an absolute one, but rather a burden of reasonable probability." (Feb. 14, 2008 a.m. Tr. at 39:1-3.) Abbott contends that this instruction is confusing, unduly suggestive and contrary to C&D's actual burden. Abbott is mistaken; the language comes directly from the Federal Circuit. See Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 555 (Fed. Cir. 1984) ("In proving damages, the patent owner's burden of proof is not an absolute one, but rather a burden of reasonable probability") ; Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065 (Fed. Cir. 1983) (same); see also Am. Seating Co. v. USSC Group, Inc., 514 F.3d 1262, 1270 (Fed. Cir. 2008) ("[t]o prove lost profits from lost sales, the patent owner bears the initial burden to show a reasonable probability that 'but for' the infringement, he would have made the sales").

Similarly, Abbott's next objection is an objection to the law as stated in the relevant case law. Abbott objects to the following instruction: "You may infer that Church & Dwight has proven its lost profits if you find that Church & Dwight has proven each of the following factors by a preponderance of the evidence: 1. the demand for the patented product . . . ." (Feb. 14, 2008 a.m. Tr. at 40:16-19.) Abbott claims that the word "product" should be replaced by the word "feature." But the case law supports the instruction as given. GoldenBlount, Inc. v. Robert H. Peterson Co., 438 F.3d 1354, 1372 (Fed. Cir. 2006) (noting that the first factor in the Panduit test is "demand for the patented product")[1]; Tate Access Floors, Inc. v. Maxcess Techs., Inc., 222

---

[1] The Panduit factors are factors that must be met by a patent holder in order to recover lost profits. See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152 (6th Cir. 1978).

F.3d 958, 971 (Fed. Cir. 2000) (same).

Likewise, Abbott's next objection goes against Federal Circuit authority. The contested instruction reads as follows: "However, to the extent Abbott relies on a product that was not 'on the market' or 'for sale' during the damages period as constituting an acceptable substitute, Abbott bears the burden of showing that the alleged alternative was actually available to Abbott during the damages period." (Feb. 14, 2008 a.m. Tr. at 44:1-4.) Abbott claims that this instruction improperly stated the burden of proof by improperly shifting it to Abbott, when C&D was required to prove all Panduit factors. Abbott fails to cite any legal support for its position. The instruction is consistent with the rulings of the Federal Circuit. Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d 1378, 1382 (Fed. Cir. 2002) ("a product or process may qualify as an acceptable non-infringing substitute for purposes of defeating a lost profits claim although it was not 'on the market' or 'for sale' during the period of infringement . . . . In such a case, the accused infringer has the burden of showing that the alleged alternative was available during the period").

Abbott's next objection makes little sense. Abbott objects to the following instruction: "However, products that infringed the Charlton Patents during the damages period should be excluded from the market when you determine Church & Dwight's share of the market." (Feb. 14, 2008 a..m. Tr. at 44:1-4.) Abbott contends this instruction does not state the proper burden of proof and is prejudicial because C&D has the burden to prove infringement and the instruction does not state that. But, in fact, the next sentence of the jury instructions states as much: "In addition to bearing the burden of proof in connection with its claim of infringement against Abbott, Church & Dwight bears the burden of proving that any other product infringed the Charlton patents during the damages period." (Feb. 14, 2008 a.m. Tr. at 44:5-9.)

9

Finally, Abbott appears to argue that it was legal error for the Court not to rule on its "motion for [partial] summary judgment or motion for judgment as a matter of law that C&D is not entitled to damages resulting from the alleged infringement of accused products manufactured by Genzyme/Wyntek prior to July 1, 2001." (Abbott. Br. at 19.) Abbott alleges that it had an implied license relating to those products covered by an agreement between Carter-Wallace and Genzyme Agreement. (Id.) According to Abbott, "[t]he fact that the jury was permitted to consider those sales as part of its damages analysis therefore was clear legal error" and requires a new trial. (Id.) First, the Court fails to see how it was legal error to allow Abbott to make its implied license argument to the jury. Abbott cites no authority to support its argument of legal error as to this issue. (Id.) Second, Abbott's substantial rights were not affected by the Court's decision not to rule on Abbott's motion for partial summary judgment, because that motion was ordered withdrawn without prejudice to Abbott's right to raise the same issues in a Motion for Judgment as a Matter of Law in conformance with Rule 50(a). Indeed, on January 29, 2008, Abbott filed a motion for judgment as a matter of law under Rule 50(a), which included the implied license argument. (Docket No. 177 at 14.) Moreover, Abbott's substantial rights were not affected by the Court's decision not to grant the Rule 50(a) motion, because pursuant to Rule 50(b), "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." FED. R. CIV. P. 50(b). Here, as explained in the accompanying opinion on Abbott's motion for judgment as a matter of law that C&D is not entitled to damages for sales of products covered by the alleged implied license, the issue was properly submitted to the jury and judgment as a matter of law for Abbott on this

issue is not warranted. For the same reasons, the Court concludes that "[t]he fact that the jury was permitted to consider those sales as part of its damages analysis" is not cause for a new trial.

### 5. Invalidity

Abbott argues that the jury's finding on invalidity is against the weight of the evidence, and that the jury instructions and several evidentiary rulings related to invalidity were prejudicial to Abbott. For reasons more fully described in the Memorandum Opinion on Abbott's JMOL, the Court concludes that the jury's verdict on invalidity does not shock the conscience and the evidence in this regard does not overwhelmingly favor Abbott.

Abbott argues that the Court improperly instructed the jury on invalidity on eight different occasions. First, Abbott contends that the Court improperly instructed the jury that the earliest date that the Mochnal patent application may be effective as prior art is December 23, 1987. The Court has previously addressed this issue at length (Docket No. 247), and will not grant a new trial on this basis. Similarly the Court rejects Abbott's argument for a new trial on the basis of the Court's instructions regarding the May Patent. The Court addressed this issue in its Memorandum Opinion on Abbott's JMOL.

Abbott next contends that the Court erred in instructing the jury to "keep in mind that the claims of the '389, '921, and '982 Patents are presumed to be valid. Because of this presumption, Abbott has the burden to prove that the asserted claims are invalid by clear and convincing evidence." (Feb. 14, 2008, a.m. Tr. at 21:9-20.) Abbott contends that this instruction is prejudicial to it because it is unduly suggestive, contrary to controlling law regarding instructing patent juries on the burden applicable and is contrary to KSR. Abbott claims that it was prejudiced because the Court did not inform the jury that the USPTO determined

obviousness using a pre-KSR standard. The Court rejects Abbott's argument because it never objected to this instruction on the grounds that it should include language instructing the jury about the obviousness standard used by the USPTO. Moreover, the instruction was not in error because KSR does not appear to have altered the statutory presumption of validity. See Power Integrations, Inc. v Fairchild Semiconductor Int'l, No. 04-1371-JJF, 2007 WL 2893391, at *1 (D. Del. Sept. 20, 2007) (concluding that KSR "does not alter the statutory presumption of validity").

Abbott next objects to the Court's instructions regarding the date of invention. (Feb. 14, 2008 a.m. Tr. 25:2-26:18.) Abbott claims that the instructions did not: (1) clearly state that C&D bears the burden of proving prior invention by a preponderance of the evidence; and (2) instruct that an experiment must include each and every element of a claim. The Court is unconvinced by Abbott's argument as it only cites cases addressing the different burden applicable to interference proceedings. Moreover, in light of the Court's analysis of anticipation in the Memorandum Opinion on Abbott's JMOL, the Court fails to find that Abbott was prejudiced by this instruction.

Next, Abbott contends that the Court's instruction regarding prior invention (Feb. 14, 2008 a.m. Tr. at 27:18-28:14) was incorrect and incomplete. Abbott claims it was prejudiced by this instruction in light of the Court's ruling on the prior art date of the Mochnal Application. The Court rejects this argument because the alleged prejudice appears to be entirely based upon Abbott's argument concerning the prior art date of the Mochnal Application. Given that the Court has already rejected Abbott's argument on the prior art date of the Mochnal Application, the Court fails to find any prejudice caused by this instruction.

Abbott next attacks the obviousness instructions as being incorrect, incomplete and not truly reflective of the scope of a proper obviousness inquiry. Specifically, Abbott complains that

the Court did not instruct the jury that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." But the Court stated as much when it stated that "[i]f the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious." (Feb. 14, 2008 a.m. Tr. at 31:23-32:3.) Abbott also faults the Court for not instructing the jury "that a technique or combination of prior art elements may be obvious if it was obvious to try the technique or combination." (Abbott Br. at 27.) However, such an instruction would have been improper, because KSR's discussion of "obvious to try" was limited to situations where a successful solution was predictable. KSR, 127 S.Ct. at 1742. Moreover, Abbott does not identify how it was prejudiced by the Court's obviousness instructions.

Abbott also contends that the Court should not have instructed the jury "by explaining the level of ordinary skill in the art as argued by C&D" (Abbott Br. at 28; Feb. 14, 2008 a.m. Tr. at 33:14-22), because C&D did not present any evidence regarding ordinary skill in the art. The Court finds no error with this instruction, because C&D did present such evidence in the form of testimony regarding the level of education and experience of witnesses that were working in the field at the time of the invention. The Court also fails to see how Abbott was prejudiced by this instruction.

Abbott argues that the Court's instruction regarding factors indicating non-obviousness (Feb. 14, 2008 a.m. Tr. at 34:7-35:9) was incorrect and incomplete because it did not properly reflect the extent to which secondary considerations of obviousness should be considered. Abbott also contends that the Court's instruction that "answering any, or all, of these questions

'yes' may suggest that the claim was not obvious" is incorrect. The Court disagrees. The Court properly instructed the jury that it "may also consider certain factors which, if established, may indicate that the invention would not have been obvious. No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the invention as a whole." (Feb. 14, 2008 a.m. Tr. at 34:7-11) The Court fails to see how this instruction is erroneous or prejudicial to Abbott, especially in light of the Court's discussion of obviousness in the Memorandum Opinion on Abbott's JMOL.

Finally, Abbott argues that several evidentiary rulings prejudiced its invalidity case. First, Abbott claims that it was improperly precluded from questioning Dr. Graham, the only invalidity expert, about statements C&D's predecessor made in opposition to the European counterpart of the May patent. Second, Abbott argues that C&D was improperly permitted to question Dr. Graham about prior work he did for Acon Laboratories and to suggest that his prior opinions were rejected by the PTO during reexamination. Abbott also alleges that it was improperly precluded from correcting the mistake. Third, Abbott contends that it was clear error to reject Abbott's motion in limine to prohibit discussion of the '982 patent reexamination proceedings.

The Court rejects Abbott's arguments concerning these evidentiary rulings. Abbott did not object to questioning of Dr. Graham about his prior work and did not object to the discussion of the '982 patent reexamination proceedings when the issue came up at trial. (Jan. 30, 3008 a.m. Tr. at 66, 74.) Therefore, Abbott waived its argument on these points. Additionally, the Court properly sustained C&D's objection regarding Abbott's questioning of Dr. Graham as beyond the scope of the re-cross examination. Moreover, the Court properly prevented Abbott from introducing evidence from a proceeding in the European Patent Office because it was likely

to confuse the jury. The proceeding applied foreign law and did not involve the Charlton Patents.

### 6. Equitable Defenses

Abbott contends that the equitable defenses of inequitable conduct and laches should have been presented to the jury. The Court disagrees. These defenses are equitable in nature and are left to the discretion of the Court. See, e.g., Hemstreet v. Comp. Entry Sys. Corp., 972 F.2d 1290, 1292 (Fed. Cir. 1992).

Abbott appears to reason that these defenses were required to be presented to the jury because willfulness was at issue. (Abbott Br. at 30.) Abbott either misreads or misrepresents the cases it relies upon. In fact, the cases cited by Abbott merely support the point that evidence of willfulness should be permitted to go to the jury when willfulness is at issue. See Crown Packaging Technology, Inc. v. Rexam Beverage Can Co., 498 F. Supp. 2d 718, 733 (D. Del. 2007) ("[s]ince Rexam raised willfulness, Crown should be allowed to fully address it"); McKesson Information Solutions LLC v. Trizetto Group, Inc., No. 04-1258, 2006 WL 940543, at * 1 n.1 (D. Del. Apr. 11, 2006) ("evidence of laches . . . will be presented to the jury as relevant . . . to [the] willfulness defense, the parties need not repeat this evidence for the court's substantive decisions on [the] equitable defenses"). Indeed, the McKesson case directly supports the point that the "substantive decision on [the] equitable defenses" is for the courts. 2006 WL 940543, at * 1 n.1

Abbott also fails to point to a single piece of relevant evidence that it was not able to present. Thus, the Court cannot conclude that Abbott was harmed by this ruling.

### III. CONCLUSION

For the foregoing reasons, Abbott's motion for a new trial (Docket No. 254) is denied.


Dated:  June 23, 2008




                                                                                s/ Garrett E. Brown, Jr.
                                                                             GARRETT E. BROWN, JR., U.S.D.J.