**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| | : | |
| CHURCH & DWIGHT CO., INC. | : | Civ. No. 05-2142 (GEB)(LHG) |
| | : | |
| Plaintiff, | : | **AMENDED MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| ABBOTT LABORATORIES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon plaintiff Church & Dwight Co., Inc.'s ("C&D")
(1) motion for attorney fees and non-taxable costs [Docket No. 334]; (2) motion for a bill of costs
and disbursements [Docket No. 331]; and (3) motion to amend the judgment to include
prejudgment and postjudgment interest [Docket No. 328] as well as defendant Abbott
Laboratories' ("Abbott") motion to stay execution on the judgment pending appeal without being
required to post a supersedeas bond or, in the alternative, for approval of a bond [Docket No.
332]. The Court has decided the motions without oral argument pursuant to Federal Rule of
Civil Procedure 78. For the reasons set forth below, the Court will: (1) deny C&D's motion for
attorney fees and non-taxable costs [Docket No. 334]; (2) deny C&D's motion for a bill of costs
[Docket No. 331]; (3) grant C&D's motion to amend the judgment to include prejudgment and
postjudgment interest [Docket No. 328]; and (4) deny in part and grant in part Abbott's motion
[Docket No. 332].

## I.      BACKGROUND

This case involves three patents owned by Church & Dwight Co., Inc. ("C&D") related to over the counter pregnancy tests: U.S. Patent Nos. 5,714,389 ("the '389 Patent"), 5,989,921 ("the '921 Patent"), and 6,485,982 ("the '982 Patent") (collectively, the "Charlton Patents"). The Charlton Patents were issued on February 3, 1998, November 23, 1999, and November 26, 2002, respectively. C&D alleged that from 1998 to September 2003, Abbott infringed the Charlton Patents by selling a line of products under the brand name Fact Plus (the "Accused Products"). Three companies manufactured the Accused Products sold by Abbott: Abbott, Wyntek and ABI. C&D alleged that the products manufactured by Abbott, Wyntek and ABI infringed claims 1, 5, 6, 7, and 10 of the '389 Patent; claims 8 and 9 of the '921 Patent; and claims 7 and 19 of the '982 Patent. C&D also alleged that the ABI-manufactured test infringed claim 9 of the '389 Patent.

A trial was held from January 17, 2008 to February 15, 2008. The jury found that C&D proved by a preponderance of the evidence that Abbott literally infringed, contributed to the literal infringement of, or induced literal infringement of the Charlton Patents as alleged by C&D. Moreover the jury found that Abbott had not proven by clear and convincing evidence that any of the claims at issue were invalid. The jury also found that C&D showed by a preponderance of the evidence that it was entitled to recover: (1) lost profits in the amount of $10,250,000.00; and (2) a reasonable royalty of $4,350,000.00 for infringing sales. Finally, the jury found that C&D proved by clear and convincing evidence that the infringement was willful.

The parties subsequently filed several post trial motions, including the C&D's motion for enhanced damages pursuant to 35 U.S.C. § 284 [Docket No. 261] as well as Abbott's motions: (1) for an order permitting it to present its defense of inequitable conduct regarding the '982 and '921 Patents [Docket No. 251]; (2) for judgment as a matter of law that the asserted claims are

2

invalid, not infringed or willfully infringed, and that C&D is not entitled to an award of damages ("JMOL Motion") [Docket No. 256]; (3) for a new trial [Docket No. 254]; and (4) for judgment as a matter of law that C&D is not entitled to damages for sales of products manufactured prior to July 1, 2001 by Genzyme and/or Wyntek [Docket No. 252]; and (5) for judgment that C&D's claim for damages is barred under the doctrine of laches [Docket No. 318].  The Court denied each of Abbott's motions and granted C&D's motion. [Docket Nos. 286-295]

As to C&D's motion for enhanced damages, the Court enhanced C&D's damages by a factor of two. (Mem. Op. at 10 [Docket No. 286]).  In making this determination, the Court considered Abbott's litigation behavior, noting that "[a]lthough the Court believes that Abbott's counsel are very talented and conducted themselves professionally, the infringement and invalidity defenses were not very strong." *Id.* at 6.  However, the Court noted that although these defenses were not availing, "these arguments were not entirely without merit." *Id*. at 7.  Further, the Court reasoned that "in its post-trial motions, Abbott has adopted a 'shotgun' approach of litigating virtually every conceivable issue, thereby burdening the Court with a number of meritless arguments." *Id.* at 6.

With respect to Abbott's JMOL Motion, the Court concluded that there was sufficient evidence from which a jury reasonably could find by clear and convincing evidence that Abbott willfully infringed.  (Mem. Op. at 18 [Docket No. 292]).  Specifically, the Court held that "the jury was presented with evidence that would support a finding of an 'objectively high likelihood that [Abbott's] actions constituted infringement of a valid patent.'" *Id.* (citing *In re Seagate*, 497 F. 3d 1360, 1371 (Fed. Cir. 2007)).  The Court further held that "the jury was presented with evidence that would support a conclusion that the 'objectively-defined risk . . . was either known

or so obvious that it should have been known to' Abbott." *Id.* at 19 (citing *Seagate*, 497 F. 3d at 1371).

In regards to Abbott's argument in the JMOL Motion that C&D was not entitled to damages under the doctrine of laches, the Court found that, because the laches defense was not part of the jury trial, Abbott had not had the opportunity to put forth evidence regarding this argument. (JMOL Motion at 26). As such, the Court granted Abbott leave to re-file after the presentation of evidence in support of its laches defense. *Id.* On August 27, 2008, a non-jury trial was held on this issue and by October 14, 2008, the matter was fully briefed by both parties. On December 23, 2008, the Court issued a Memorandum Opinion and Order denying Abbott's motion that C&D's claim for damages was barred under the doctrine of laches. [Docket Nos. 319, 320].

On February 20, 2009, judgment was entered in favor of C&D in the amount of $29,200,000.00, which include enhanced damages in the amount of $14,600,000.00 (the "Judgment"). [Docket No. 323]. On March 5, 2009, C&D filed its motion to amend the judgment to include prejudgment and postjudgment interest [Docket No. 328] and on March 23, 2009, C&D filed its motions for a bill of costs and disbursements [Docket No. 331] as well as its motion for attorney fees and non-taxable costs [Docket No. 334]. Also on March 23, 2009, Abbott filed its motion to amend the judgment pending appeal without being required to post a supersedeas bond or, in the alternative, for approval of a bond.[1]  [Docket No, 332].  These

---

[1]On February 26, 2009, the Court entered a consent order temporarily staying C&D from executing upon the judgment beyond the initial ten-day period provided in Federal Rule of Civil Procedure. 62(a) pending Abbott's filing and the Court's resolution of Abbott's motion to stay execution on the judgment pending appeal [Docket No. 332]. [Docket No. 326]. Further, Abbott filed a notice of appeal on March 23, 2009 [Docket No. 330], appealing several of this Court's

matters were fully briefed as of April 13, 2009.[2]

## II.    DISCUSSION

### A.    Motion for Attorney and Expert Witness Fees

#### 1.        Standard of Review

"A court may award attorney fees to a party in 'exceptional' cases pursuant to 35 U.S.C. §

285." *Sun Coast Merch. Corp. v. CCL Prods. Enters., Inc*., 179 Fed. App'x 6, 12 (Fed. Cir.

2006).  A trial court undertakes a three-step inquiry to adjudicate a request for attorney fees.

First, the Court must determine that the party requesting attorney fees is the "prevailing

party" in the action. *See* 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable

attorney fees to the prevailing party.")  Second, the court examines whether there is clear and

convincing evidence that the case is exceptional. *Evident Corp. v. Church & Dwight Co., Inc*.,

399 F.3d 1310, 1315 (Fed. Cir. 2005). "Exceptional cases usually feature some material,

inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or

inequitable conduct . . . , misconduct during litigation, vexatious or unjustified litigation, conduct

that violates Federal Rule of Civil Procedure 11, or like infractions." *Serio-US Indus, v. Plastic

Recovery Techs, Corp*., 459 F.3d 1311, 1321-22 (Fed. Cir. 2006), citing *Cambridge Prods. Ltd.*

---

rulings. [Docket No. 330].  However, by an order entered April 27, 2009, the United States Court
of Appeals for the Federal Circuit deactivated the appeal until the disposition of the last
outstanding motions by this Court. [Docket No. 346]. Additionally, on April 30, 2009, this Court
entered an order setting forth that, pursuant to Federal Rule of Civil Procedure 58(e), C&D's
motion for attorney fees [Docket No. 334] has the same effect under Fed. R. App. P. 4(a)(4) as
C&D's motion to amend the judgment to include prejudgment and postjudgment interest [Docket
No. 328] in order to ensure Abbott's appeal does not become effective. [Docket No. 349].

[2]The Court notes that both Abbott and C&D submitted an additional filing with respect to
C&D's motion to amend the judgment to include prejudgment and postjudgment interest  on
May 12 and May 13, respectively. [Docket Nos. 350, 351].

*v. Penn Nutrients, Inc*., 962 F.2d 1048, 1050-51 (Fed. Cir. 1992). "Absent misconduct in the litigation or in securing the patent, a trial court may only sanction the patentee if . . . the litigation is [both] brought in subjective bad faith and . . . objectively baseless." *Serio-US*, 459 F.3d at 1322, (citing *Professional Real Estate Investors v. Columbia Pictures Indus*., 508 U.S. 49, 60-61 (1993)).

Third, the Court may exercise discretion in awarding any attorney fees. The Court may "weigh intangible as well as tangible factors: the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice." *Serio-US*, 459 F.3d at 1322. "Although the trial court retains broad discretion to award or deny attorneys' fees, '[t]he court's choice of discretionary ruling should be in furtherance of the policies of the laws that are being enforced, as informed by the court's familiarity with the matter in litigation and the interests of justice." *Modine Mfg. Co. v. Allen Group, Inc*., No. C-85-6946-DLJ, 1989 U.S. Dist. LEXIS 16413, *45 (N.D. Cal., Nov. 30, 1989), *aff'd* 917 F.2d 538, (Fed. Cir. 1990) (citing *S.C. Johnson & Son, Inc.,*781 F.2d 198, 201 (Fed. Cir. 1986) (internal citations omitted)).

## 2.      Willful Infringement

An express finding of willful infringement is a sufficient basis for classifying a case as "exceptional." Further, "when a trial court denies attorney fees in spite of a finding of willful infringement, the court must explain why the case is not 'exceptional' within the meaning of the statute." *Modine Mfg. Co*., 917 F.2d at 543 (citing *S.C. Johnson & Son, Inc.,* 781 F.2d at 201) "Nevertheless, the decision whether or not to award fees is still committed to the discretion of the trial judge, and 'even an exceptional case does not require in all circumstances the award of

6

attorney fees.'" *Modine Mfg. Co.*, 917 F.2d at 543 (citing *S.C. Johnson & Son, Inc.,*781 F.2d at

201); *see also Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1573 ("a finding of willful infringement does

not mandate that damages be increased or that attorneys fees be awarded") (citing *Read Corp. v.

Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992)).  It is also noteworthy that the purpose of

awarding increased damages for willful infringement is different from that of an award of

attorney fees because "whereas an increase in damages based on willful infringement is based on

the need to compensate the patentee and to deter and punish infringers, an award of attorneys fees

is based more appropriately on the conduct of the parties during the litigation." *Lightwave Techs.,

Inc. v. Corning Glass Works*, No. 86 Civ. 759 (KC), 1991 U.S. Dist. LEXIS 543, at *39

(S.D.N.Y. Jan. 16, 1999).

     C&D argues that an award of attorney fees is appropriate here because, in the JMOL

Motion, this Court concluded that the jury was "presented with evidence that would support a

finding of an 'objectively high likelihood that [Abbott's] actions constituted infringement of a

valid patent." (C&D's Motion for Atty Fees at 12 (quoting Mem. Op. at 18 [Docket No. 292]

(further citations omitted))).  C&D also notes that this Court further concluded that the jury "was

presented with evidence that would support a conclusion that the 'objectively-defined risk . . .

was either known or so obvious that it should have been known to' Abbott." (C&D Motion for

Atty Fees at 12 (quoting JMOL Mem. Op. at 19 (further citations omitted))).  Thus, in light of the

fact that the jury found Abbott's infringement to be willful and the Court upheld that verdict, "it

is only fair that C&D be compensated for the attorneys' fees and non-taxable costs it was forced

to incur" relating to the lawsuit.  (C&D Motion for Atty Fees at 12).

     **3.     Enhanced Damages**

7

"As a general rule, attorneys fees under section 285 may be justified by any valid basis for awarding increased damages under section 284." *Jurgens*, 80 F.3d at 1573 n. 4 (citing *Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1580-81 (Fed. Cir. 1986).  However, a court may deem certain conduct "exceptional" and a basis for awarding attorney fees but also find that such conduct does not qualify for an award of increased damages. *Id.*  Similarly, "[e]ven where damages are increased under section 284, a court may decline to award attorneys fees under section 285." *Id.* (citing *S.C. Johnson & Son*, 781 F.2d at 201 (Fed. Cir. 1986)).  As such, several courts have granted enhanced damages but denied the award of attorney fees.  *See IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 223 (D. Del. 2007) (enhancing damages by fifty percent but denying an award of attorney fees because "defendant's infringement of the [patent in suit] was a 'close' question, and defendant's trial tactics did not rise to the level of bad faith or vexatious litigation."); *see also Black & Decker Inc. v. Robert Bosch Tool Corp.*, No. 04-cv-7955, 2006 U.S. Dist. LEXIS 84969, at *14-*15, *29 (N.D. Ill. Nov. 20, 2006) (denying award of attorney fees because although defendant's trial strategy and motion practice "may have been unorganized or occasionally misguided, the tenor and tone of [defendant's] advocacy was nonetheless professional" and because "the substantive positions argued by both parties were -- for the most part -- meritorious," but enhancing damages by fifty percent because the "imposition of punitive sanctions is warranted based on evidence of [defendant's] copying, . . . [defendant's] lack of a good faith basis for its actions, its size and financial condition, the lack of closeness in this case, and [defendant's] failure to take remedial actions.")[3]

---

[3]In its reply, C&D argues that these cases, which are cited by Abbott in it opposition, are distinguishable because in those cases, the Court awarded enhanced damages short of the one hundred percent enhancement awarded in the instant case.  (C&D's Atty Fees' Rep. at 14).

C&D argues that, in granting its motion for enhanced damages, this Court applied the factors set forth in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992) and found that seven of the nine *Read* factors weighed in favor of enhancing damages, including: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; and (5) the "closeness of the case."  (C&D's Motion for Atty Fees at 14).  C&D argues that the factors that the Court concluded weighed in favor of enhancing damages were far more numerous and significant than those found to weigh against enhancement, that the Court in granting enhanced damages found that this was not a close case and that Abbott did not proceed in good faith.  *Id*. at 15.  As such, C&D asserts that "[w]hen the policies of Section 285 are considered, it is clear on this record that it would be grossly unjust and send the wrong message to require C&D to pay its own attorneys' fees." *Id.* at 15 (citing *S.C. Johnson & Son, Inc.*, 781 F.2d at 201).

### 4.        Litigation Misconduct

A court may also deem a case to be "exceptional" if the prevailing party proves, by clear and convincing evidence, that the nonprevailing party engaged in "misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *Serio-US*, 459 F.3d at 1321-22 (citation omitted).  C&D argues that Abbott

---

However, this argument is unavailing because neither of these cases, nor any other case cited by C&D or found by this Court, stand for the proposition that a Court's decision to grant attorney fees should be linked to the amount by which it enhances damages.

engaged in litigation misconduct by filing counterclaims that "it knew or certainly should have

know it had no standing to assert." (C&D's Motion for Atty Fees at 17).  C&D further asserts

that, because the "filing and maintaining of an infringement suit which the patentee knows or on

reasonable investigation should know, is baseless constitutes grounds for deciding a case

exceptional . . . and awarding costs, attorney fees, and expenses to the accused infringer. *Id.* at 16

(quoting *Eltech Sys. Corp., v. PPG Indus. Inc.*, 710 F. Supp. 622, 636 (W.D. La 1988), *aff'd*, 903

F.2d 805 (Fed. Cir. 1990) (further citations omitted)).

### 5.      An Award of Attorneys Fees in Not Warranted

The Court concludes that, in light of the foregoing, an award of attorney fees is not

warranted in this matter.  Although this Court upheld the jury's verdict that Abbott's

infringement was willful, under such circumstances "the decision whether or not to award fees is

still committed to the discretion of the trial judge, and 'even an exceptional case does not require

in all circumstances the award of attorney fees.'" *Modine Mfg. Co.*, 917 F.2d at 543 (citing *S.C.

Johnson & Son, Inc.,*781 F.2d at 201); *see also Jurgens*, 80 F.3d at 1573 ("a finding of willful

infringement does not mandate that damages be increased or that attorneys fees be awarded")

(citing *Read Corp.*, 970 F.2d at 826)).

Despite the fact that the Court has previously held that seven of the nine *Read* factors

weighed in favor of enhancing damages, the Court did not hold that "this was not a close case

and that Abbott did not proceed in good faith." C&D's Motion for Atty Fees at 14 (citing Mem.

Op. at 5-8 [Docket No. 286]).  Instead, the Court found that the "whether Abbott deliberately

copied the ideas or design" at issue weighed "slightly in favor of enhanced damages," concluding

that C&D provided sufficient circumstantial evidence to support an inference that Abbott had

copied the idea of a test strip in a housing.  (Mem Op. at 4 [Docket No. 286]).  With respect to

Abbott's litigation behavior, the Court also stated that Abbott's counsel are "very talented and

conducted themselves professionally." *Id.* at 6.  Although the Court noted that "in its post-trial

motions, Abbott has adopted a 'shotgun' approach of litigating virtually every conceivable issue,

thereby burdening the Court with a number of meritless arguments," the Court nevertheless held

that while Abbott's infringement and invalidity defenses were not strong or convincing, they

were not entirely without merit.  *Id.* at 7.  As such, the Court also held that the "closeness of the

case" factor only weighed slightly in favor of enhanced damages.  *Id.*  The Court therefore

concludes that Abbott's degree of culpability, Abbott's litigation behavior, as well as the

closeness of the question militate against an award of attorney fees.  *Serio-US*, 459 F.3d at 1322.

　　　　With respect to whether attorney fees should be awarded for Abbott's counterclaims, as

Abbott notes, C&D does not specifically attack Abbott's counterclaims asserting the SurModics

Patents, yet still includes them in its fee calculation.  (Abbott's Atty Fees Opp. at 23).  Further, as

to the counterclaims asserting the Detergent Patents, as Abbott concedes, this Court dismissed

those counterclaims for lack of standing.  (Mem. Op. at 1 [Docket No. 38]).  However, the Court

did not find that Abbott brought these counterclaims in bad faith; instead the Court disagreed

with Abbott's contentions and its interpretation of its rights under the license agreement.  *Id.* at 2-

9.  As such, the Court holds, in its discretion, that an award of attorney fees with respect to

Abbott's counterclaims is equally unwarranted.

### 6.　　　An Award of Expert Witness Fees is Not Warranted

　　　　C&D also argues that it is entitled to expert witness fees incurred in connection with this

litigation. (C&D's Motion for Atty Fees at 27-29).   As C&D correctly asserts, "courts can use

their 'inherent power' to sanction a party with the full amount of expert fees in excess of the statutory cap when there is 'a finding of fraud or abuse of the judicial process.'" *Id.* at 27 (citing *Amsted Indus. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994)).  However, for the above mentioned reasons regarding the award of attorney fees, the Court concludes that the award of expert witness fees is also not appropriate here. *Id.* (citing *Amsted Indus. v. Buckeye Steel Castings Co.*, 23 F.3d at 378).  As such, C&D's motion with respect to expert witness fees is denied.

**B.   Motion for Bill of Costs**

In its motion for a bill of costs, C&D sought reimbursement for taxable costs in the amount of $82,517.38. [Docket No. 331]  However, the parties subsequently conferred and agreed on an award of taxable costs in the amount of $50,973.56. *See* Abbott's Letter dated July 20, 2009 [Docket No. 356].

In light of the foregoing, C&D's motion for a bill of costs [Docket No. 331] is denied. C&D is awarded $50,973.56 in taxable costs.

**C.   C&D's Motion to Amend the Judgment to Include Prejudgment and Postjudgment Interest**

**1.   C&D is Entitled to Prejudgment Interest**

Courts may award prejudgment interest pursuant to 35 U.S.C. § 284, which provides, in pertinent part:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

When a patentee asserts a patent claim that is held to be valid and infringed, prejudgment

interest is generally awarded.  *Ecolab, Inc. v. FMC Corp.*, Nos. 2008-1228, 2008-1252, 2009

U.S. App. LEXIS 12390, at *38-*39 (citing *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648,

656-57 (1983) (holding that "prejudgment interest should be awarded under § 284 absent some

justification for withholding such an award."))

  However, the United States Supreme Court has also held that 35 U.S.C. § 284 "leaves the

court some discretion in awarding prejudgment interest. For example, it may be appropriate to

limit prejudgment interest, or perhaps even to deny it altogether, where the patent owner has been

responsible for undue delay in prosecuting the lawsuit." *Gen. Motors Corp.*, 461 U.S. at 656-57.

Further, "a court's justification for limiting prejudgment interest 'must have some relationship to

the award of prejudgment interest.'" *Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297,

1307 (Fed. Cir. 2005) (quoting *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554,

1557-58 (Fed. Cir. 1986) (holding that the patentee's one and one-half year delay in removing

patent notice from a product after expiration of the patent would not support a denial of

prejudgment interest)).

  The purpose of prejudgment interest is "to ensure that the patent owner is placed in as

good a position as he would have been had the infringer entered into a reasonable royalty

agreement." *Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed. Appx. 322, 334 (Fed. Cir.

2003) (quoting *Gen. Motors Corp.*, 461 U.S. at 655 (internal quotation marks omitted)).  As

such, "[p]rejudgment interest has no punitive, but only compensatory, purposes. Interest

compensates the patent owner for the use of its money between the date of injury and the date of

judgment. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996) (quoting *Bio-Rad Lab.,

Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969, (Fed. Cir. 1986)).  Therefore, "[a]lthough

the rate of prejudgment interest is a matter left largely to the discretion of the district court, the

court must be guided by the purpose of prejudgment interest in exercising that discretion."

*Hockerson-Halberstadt, Inc.*, 62 Fed. Appx. at 334 (quoting *Bio-Rad Laboratories, Inc.*, 807

F.2d at 969 (further citations omitted)).

Abbott argues that C&D is not entitled to any prejudgment interest because it unduly

delayed the prosecution of this lawsuit, or specifically because it "delayed filing its action on the

'389 Patent– the first to issue – for more than ***seven years*** after C&D was aware of its potential

claims against Abbott. (Abbott's Opp. at 2 [Docket No. 333] (emphasis in original)).  C&D

argues that Abbott is foreclosed from raising such an argument in light of this Court's

Memorandum Opinion and Order denying Abbott's Motion for Judgment that Plaintiff's Claim

of Damages is Barred Under the Doctrine of Laches ("Laches Opinion") [Docket Nos. 319, 320].

(C&D's Motion to Amend Judgment at 3 [Docket No. 328].)

As Abbott correctly notes, this Court's Laches Opinion does not prevent Abbott from

arguing that C&D unduly delayed in filing suit.  *See* Abbott's Opp. at 3-4 (citing *Lummus*

*Industries, Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988) (reasoning that "the

justification for withholding prejudgment interest must have some relation to the reasons for

awarding it and remanding case to determine whether patentee's wrongful conduct should

prevent it from collecting prejudgment interest where district court had previously declined to

apply doctrine of laches); *see also State Contr. & Eng'g Corp. v. Condotte Am., Inc.*, No. 97-

7014, 2002 U.S. Dist. LEXIS 28210, at *10-*11 (S.D. Fl. June 4, 2002); *Mainland Industries,*

*Inc. v. Standal's Patents, Ltd.*, No. 81-928-BE, 1985 U.S. Dist. LEXIS 1493, *4-*5, *13-*14 (D.

Or. Oct. 15, 1985)).

Nevertheless, in the Laches Opinion, this Court concluded that Abbott failed to put forth sufficient evidence to demonstrate that C&D unreasonably delayed in filing suit.  (Laches Opinion at 11-19).  In its opposition to C&D's instant motion, Abbott has failed to put forth any evidence regarding how C&D's delay prejudiced Abbott and how such delay relates prejudgment interest. *See Lummus Industries, Inc.* 862 F.2d at 275.   Instead, Abbott simply reiterated its previous arguments in support of the application of the doctrine of laches.

In light of the foregoing as well as the fact the award of prejudgment interest is the rule and not the exception, the Court concludes that C&D is entitled to prejudgment interest. *See Gen. Motors Corp.*, 461 U.S. at 656-57 ("prejudgment interest should be awarded under § 284 absent some justification for withholding such an award."); *see also State Contr. & Eng'g Corp.*, 2002 U.S. Dist. LEXIS 28210 at *11 (holding that, "[w]hile the Court could conceive of a situation where a laches defense to infringement is rejected but prejudgment interest is denied due to undue delay," defendants were on notice of plaintiff's patents prior to the filing of suit and therefore defendant cannot show prejudice for prejudgment interest purposes.)

## 2.   C&D is Entitled to Prejudgment Interest from the Date of Infringement

In the alternative, Abbott argues that the Court should use its discretion and limit C&D's prejudgment interest award from the date the Complaint was filed in order to account for any undue delay by C&D in filing suit.  (Abbott's Opp. at 4-5).  As noted above, the Court finds that the award of prejudgment interest should not be limited due to any such delay or for any other reason Abbott asserts.  As such, prejudgment interest shall be calculated from the date of infringement to the date that judgment was entered, or April 20, 1999 to February 19, 2009.  *Gen. Motors Corp.*, 461 U.S. at 656 ("[D]amages consist not only of the value of the royalty payments

15

but also the forgone use of the money between the time of infringement and the date of the judgment.")

### 3.      Prejudgment Interest Should Be Calculated at the Prime Rate

C&D argues that the rate of prejudgment interest should be calculated at prime rate in order to achieve the overriding purpose of such an award, namely to make the patent owner whole.  (C&D's Motion to Amend Judgment at 3).  C&D further asserts that "courts have recognized the prime rate as the appropriate rate of prejudgment interest in patent infringement cases."  *Id.* at 4 (collecting cases).  C&D also states that since the prime rate represents the real-world, time-value of money it is not necessary for a patentee to demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest.  (C&D's Motion to Amend Judgment at 5  (quoting *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991))).  Therefore, C&D argues, it need not demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate because it is consistent with C&D's foregone use of the money owed by Abbott for its willful infringement. (C&D's Motion to Amend Judgment at 5 (citing *Uniroyal*, 939 F. 2d at 1545; *Studiengesellschaft Kohle m.b.H v. Dart Industries, Inc.,* 862 F.2d 1564 , 1579-80 (Fed. Cir. 1988); *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, No. 96-04047, slip op. at 13-14 (D.N.J. Jan. 5, 2005)).

Abbott counters that, if the Court is to grant C&D prejudgment interest, it should calculate such interest using the risk-free rate associated with United States Treasury Bills because such a rate compensates C&D for loss of the time value of the money, but also "accounts for the risk that the patentee avoided during the infringement period. " (Abbott's Opp. at 9 (citing *Hynix Semiconductor Inc. v. Rambus Inc.*, No. 00-20905, 2006 WL 2522506 at *2 (N.D.

16

Cal. Aug. 30, 2006))).  It argues that "the rate associated with U.S. Treasury bills reflects a

'virtually risk-free investment, . . .  permit[ting] the Court to avoid the speculation involved in

determining whether possible higher-yielding, but riskier, investments would have been

successful for the patent holder.'" (Abbott's Opp. at 9 (citing *Mars, Inc. v. Coin Acceptors, Inc.*,

513 F. Supp. 2d 128, 134, 136-37 (D.N.J. 2007))).

       As Abbott notes, some Courts have held that, where a patentee has failed to put forth

evidence that it borrowed money during the infringement period at the prime rate, the more

appropriate interest rate is the one associated with U.S. Treasury bills.  (Abbott's Opp. at 10-11

(citing *Mars, Inc.*, 513 F. Supp. at 136; *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed.

Cir. 1997); *Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, No. 03-2910,

2006 U.S. Dist. LEXIS 80931, at *18-*19 (S.D. Tex. Nov. 6, 2006) (further citations omitted)).

However, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") has also

held that "it is not necessary that a patentee demonstrate that it borrowed at the prime rate in

order to be entitled to prejudgment interest at that rate." *Uniroyal, Inc.*, 939 F.2d at 1545 (citing

*Studiengesellschaft Kohle, m.b. H.*, 862 F.2d at 1579-80; *Gyromat Corp. v. Champion Spark

Plug Co.*, 735 F.2d 549, 556-57 (Fed. Cir. 1984); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d

1056, 1066 (Fed. Cir. 1983)).  This is because "'[t]he Federal Circuit has given district courts

great discretion' when determining the applicable interest rate for an award of prejudgment

interest." *Joyal Prods. v. Johnson Elec. North Am., Inc.*, No. 04-5173, 2009 U.S. Dist. LEXIS

1553, at *28 (D.N.J. Feb. 26, 2009) (quoting *IPPV Enterprises, LLC v. EchoStar Comm'n Corp.*,

No. 99-577, 2003 U.S. Dist. LEXIS 3530, at *3 (D. Del. Feb. 27, 2003) (further citation

omitted); *see also Studiengesellschaft Kohle, m.b. H.*, 862 F.2d at 1580 ("the question of the rate

at which . . . an award [of prejudgment interest] should be made is a matter left to the sound discretion of the trier of fact.") (citing *Bio-Rad Laboratories Inc.*, 807 F.2d at 969)).

Abbott argues that C&D "has presented no evidence that it had to borrow additional funds because it was unable during the period of alleged infringement to use the money awarded by the jury" and therefore C&D has failed to put forth evidence that it requires interest at the prime rate to be fully compensated.  (Abbott Opp. at 10).  C&D counters that, although it is not required to do so, it has put forth evidence that the prime rate is consistent with C&D's forgone use of the money owed to it by Abbott, citing the fact that its "weighted average rate on debt" and "weighted average cost of capital" ("WACC") were "near or above the prime rate for the prejudgment period."(C&D's Motion to Amend Judgment (citing Decl. of James J. Donohue ("Donohue Decl.") at ¶¶ 9-15, Exhs. E-P)).[4]

The Court concludes that prejudgment interest should be calculated using the prime rate.  Although neither party explains why C&D's weighted average on debt or its WACC does or does not demonstrate that C&D borrowed at the prime rate during the infringement period, "[c]ourts have recognized that the prime rate best compensate[s] a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money, which is 'a better measure of the harm suffered as a result of the loss of the use of money over time.'" *Joyal Prods.*, 2009 U.S. Dist. LEXIS 1553 at *28-*29 (quoting *IMX, Inc.*, 469 F. Supp. 2d at 227 (citing *Mars, Inc. v. Conlux USA Corp.*, 818 F. Supp. 707, 720-21 (D. Del. 1993), *aff'd*,

---

[4] C&D defines weighted average rate on debt as "a corporation's cost of obtaining debt" and WACC as "a corporation's cost of obtaining both debt and equity financing."  (C&D's Motion to Amend Judgment at 6 nn. 3-4 (citing Donohue Decl. at ¶¶ 9, 11)).

16 F.3d 421 (Fed. Cir. 1993)).  In light of the foregoing as well as the fact that C&D is not

required to put forth evidence that it borrowed at the prime rate during the infringement period in

order to recover prejudgment interest at that rate, C&D is entitled to prejudgment interest set at

the prime rate. *Uniroyal, Inc.*, 939 F.2d at 1545 (citations omitted).

### 4.        Prejudgment Interest Should Be Compounded Quarterly

C&D argues that prejudgment interest should be compounded quarterly because this

method "reflects the standard business practice of fiscal quarters that courts have frequently

adopted." (C&D's Motion at 7 (citations omitted)).  Abbott counters that the Court should

instead award simple interest, asserting that "C&D bears the burden of establishing that it is

entitled to the interest payment that it seeks" and that C&D failed to put forth any justification for

why it is entitled to compound interest.  (Abbott's Opp. at 6).  In the alternative, Abbott argues

that the Court should award C&D interest compounded annually because such a rate is "an

accepted practice within the patent field." *Id.* at 7 (citation omitted).

The Court concludes that C&D has put forth sufficient evidence that the prejudgment

interest should be compounded.  The Federal Circuit "has recognized that the district court has

substantial discretion to determine the interest rate in patent infringement cases." *Gyromat Corp.*,

735 F.2d at 556 (citing *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, (Fed. Cir. 1984)

(further citation omitted).  Also, C&D notes, according to Chisum on Patents, most courts award

compound, rather than simple, prejudgment interest. (C&D's Reply at 7 (citing Chisum, Patents,

§ 20.03 at 325-26)). Further, "'[i]n applying prejudgment interest, courts have recognized that

compounding is necessary to fully compensate the patentee. Because a patentee's damages

include the forgone use of money, compounded is needed to account for the time value of

19

money.'" *Mars, Inc.*, 513 F. Supp. 2d at 137 (quoting *AMP Inc. v. Lantrans, Inc.*, No. 90-1525, 1991 U.S. Dist. LEXIS 20296, at *7 (C.D. Cal. Nov. 7, 1991)).  In light of the foregoing, prejudgment interest shall be compounded in the instant case.

The Court also concludes that C&D has put forth sufficient evidence that prejudgment interest should be compounded quarterly.  Abbott notes that "payment of royalties annually, as well as annual compounding of interest, are an accepted practice within the patent field." (Abbott Opp. at 7 (citing *Cargill, Inc. v. Sears Petroleum & Transport Corp.*, 388 F. Supp. 2d 37, 81 (N.D.N.Y. 2005)).  However, the same case which Abbott cites for this proposition also reasons that, "to be sure there are many cases that order compounding with greater frequency." *Cargill, Inc.*, 388 F. Supp. 2d at 81 (*comparing Laitram Corp.* 115 F.3d at 955; *Accuscan, Inc. v. Xerox Corp.*, No. 96-2579, 2000 U.S. Dist. LEXIS 2822, at *6-*7 (S.D.N.Y. March 14, 2000); *Michaels v. Art Betterley Enters.*, No. 90-1015, 1996 U.S. Dist. LEXIS 18671, at *15 (W.D.N.Y. Dec. 12, 1996) (all compounding interest annually) *with Lampi Corp. v. Am. Power Prods., Inc.*, 2004 U.S. Dist. LEXIS 14049, No. 93-1225, at *8 (N.D. Ill. July 22, 2004); *Seal-Flex, Inc. v. W.R. Dougherty & Assocs.*, 254 F. Supp. 2d 647, 657 (E.D. Mich. 2003) (all compounding interest on a monthly basis).

The Court concludes that the evidence put forth in the Declaration and Reply Declaration of James Donohue is sufficient to demonstrate that an award of prejudgment interest compounded quarterly would award C&D "damages adequate to compensate for the infringement." *Gen. Motors Corp.*., 461 U.S. at 657.  Further, with the exception of citing multiple cases in which the Court used its discretion to award interest compounded annually, the Court concludes that Abbott has failed to put forth any evidence or arguments to demonstrate

20

why such an award is inappropriate given the circumstances of the instant case.  As such, C&D is entitled to prejudgment interest compounded quarterly.

**5.       Abbott's Contention that the Damages Award Should be Apportioned Evenly Across the Damages Period is Without Merit**

Abbott argues that C&D has artificially inflated its damages calculations for prejudgment interest by assuming that the bulk of the damages award would have been received as royalties or profits at the beginning of the damages period and therefore asks that the Court instead base this calculation on an even distribution of the damages award across the period of infringement. (Abbott's Opp. at 12-13).  However, as C&D notes, Abbott has put forth no evidence nor case law regarding why such an apportionment is appropriate.  (C&D's Rep. at 8)

In contrast, C&D's calculation is based on Abbott's actual sales for each year of the damages period.  (Donohue Decl. at ¶ 5, Exh. B).  The Court concludes that C&D's calculations are therefore appropriate.

**6.       Prejudgment Interest Should Be Calculated on a Pre-Tax Basis**

Abbott further argues that any award of prejudgment interest must be calculated on after-tax amounts because, had C&D received royalties or profits from Abbott during any portion of the infringement period, any interest it earned would have been on after-tax amounts.  (Abbott Opp. at 13).  In contrast, C&D asserts that the award of prejudgment interest should be based on pre-tax damages, arguing that the majority of cases calculate prejudgment interest based on pre-tax damages.  (C&D's Rep. at 8-9).

"With respect to the issue of whether prejudgment interest should be based on the 'pre-tax' rate, versus calculating prejudgment interest based on 'after-tax' damages, there is case law supporting both methods. *Cordis Corp. v. Medtronic Vascular, Inc.*, 576 F. Supp. 2d 645,

652 (D. Del. 2008) (citing *Hughes Aircraft Co. v. U.S.*, 86 F.3d 1566, 1574-75 (Fed. Cir. 1996)

(awarding prejudgment interest based on pre-tax rate); *Electro Scientific Indus., Inc. v. Gen.*

*Scanning*, 247 F.3d 1341, 1354 (Fed. Cir. 2001) (awarding prejudgment interest on after-tax

rate)). However, in the instant case the Court agrees with C&D that it is appropriate to calculate

prejudgment interest on a pre-tax basis.

As C&D notes, in upholding a lower court's use of the pre-tax rate in the calculation of

prejudgment interest, the Federal Circuit has reasoned that calculating such interest based on

after-tax damages: "(1) had been rejected by the case law; (2) would be speculative due to [the

patentee's] particular tax situation, including what actions [the patentee] might have taken to

reduce such taxes in prior years; and (3) was not provided for by Congress in the tax

overpayment provisions." *Hughes Aircraft*, 86 F.3d at 1575.  An award of prejudgment interest

on an after-tax basis therefore allows for too much speculation regarding C&D's actual tax

payments, including deductions and credits it may have taken, during the infringement period.

Indeed, as C&D notes, the Court in *Cordis*, after initially ruling that prejudgment interest should

be computed on an after-tax basis, later reversed its decision, reasoning that "[i]t is apparent from

the papers submitted that the appropriate method of calculating prejudgment interest based on

after-tax damages is fraught with opportunities for mischief."  (C&D's Rep. at 9 (citing *Cordis*,

No. 98-cv-19-SLR slip op. at 3 (D. Del. Sept. 30, 2008) attached as Exh. 1 to C&D Rep.)).  As

such, prejudgment interest shall be calculated on a pre-tax basis.

### 7.      C&D's Request for Prejudgment Interest on Attorney's Fees is Moot.

C&D also seeks an award of prejudgment interest on any attorney fees awarded by this

Court.  (C&D's Motion to Amend Judgment at 8).  As noted above, the Court has denied C&D's

Motion for Attorney's Fees.  As such, C&D's request for prejudgment interest on such an award is denied as moot.

### 8.    C&D Is Entitled to Postjudgment Interest

28 U.S.C. § 1961 governs the award of postjudgment interest and provides in pertinent part that

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[.] the date of the judgment.

28 U.S.C. § 1961(a).  The statute further provides that postjudgment interest shall be computed daily to the date of payment and shall be compounded annually.  28 U.S.C. § 1961(b).

C&D argues that the phrase "money judgment," as used in the statute, encompasses not only the actual damages for harm done to a plaintiff, but also the prejudgment interest that is assessed on that reward as well as any enhanced portion of a damage award made for willful wrongdoing and any award of attorney fees. (C&D's Motion to Amend at 10-11 (citing  *Sun Ship, Inc.* v. *Matson Navigation Co.,* 785 F.2d 59, 63 (3rd Cir. 1986); *In re Stone & Webster, Inc. et al.,* No. 04-834-SLR, 2006 U.S. Dist. LEXIS 95566, at *21 (D. Del. Oct. 23, 2006), *rev'd and vacated on other grounds*, Nos. 05-2717 & 07-1772, 2009 U.S. App. LEXIS 3687 (3d Cir. Del. Feb. 24, 2009) (awarding postjudgment interest on initial judgment plus prejudgment interest); *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 99 (3d Cir. 1993) (upholding grant of postjudgment interest on award in first judgment prior to appeal which included punitive damages); *see also Air Separation Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290-91 (9th Cir. 1994) (collecting cases where postjudgment interest was awarded on prejudgment

23

interest award, punitive damages award, and on attorney fees award) (citations omitted); *Brown v. Petrolite Corp.*, 965 F.2d 38, 51 (5th Cir. 1992) (holding that "the plain language of [§ 1961] authorizes postjudgment interest on punitive damages, which are a part of the 'money judgment'") (citations omitted); *DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc.,* No. 3:99-CV-0569RM, 2002 U.S. Dist. LEXIS 28036, at *9 (N.D. Ind. Dec. 9, 2002) (Section 1961 provides "the right to collect interest on punitive damage awards.")).  As such, C&D asserts that it is entitled to postjudgment interest on the enhanced damages awarded for Abbott's willful conduct as well as any prejudgment interest and attorney fees awarded by the Court. (C&D's Motion to Amend Judgment at 10-11).

In light of the case law cited by C&D as well as the fact that Abbott does not contest any of C&D's assertions with respect to postjudgment interest, the Court concludes that C&D is entitled to postjudgment interest on the entire damages award of $29,200,000, which includes the enhanced damages awarded, as well as the prejudgment interest awarded herein.

### 9.     Conclusion

For the foregoing reasons, the Judgment [Docket No. 323], is amended to include (1) prejudgment interest on the damages awarded by the jury calculated at the prime rate compounded quarterly for a total of $8,813,328.00; and (2) postjudgment interest on the Court's final money judgment, including the damages awarded by the jury, the prejudgment interest awarded by the Court, the enhanced damages awarded by the Court, calculated in accordance with 28 U.S.C. § 1961.

**D.     Abbott's Motion to Stay Execution on the Judgment Pending Appeal Without Being Required to Post a Superseseas Bond or, in the Alternative, For Approval of a Bond**

24

Abbott requests that the Court stay the execution of the Judgment pending disposition of its appeal to the Federal Circuit without requiring that Abbott post a bond. (Abbott's Motion at 1).  In the alternative, Abbott requests that the Court approve a bond in the amount of $29,200,000.00, plus any additional award the Court may enter for interest, costs and fees. (Abbott's Motion at 1).  C&D opposes Abbott's request to waive the bond requirement and requests that the Court Abbott to post a bond in the same amount as requested by Abbott. (C&D's Opp. at 8).

Federal Rule of Civil Procedure 62 provides, in relevant part, that:

(a)    Except as stated in this rule, no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 10 days have passed after its entry. But unless the court orders otherwise, the following are not stayed after being entered, even if an appeal is taken:

    (1)    an interlocutory or final judgment in an action for an injunction or a receivership; or

    (2)    a judgment or order that directs an accounting in an action for patent infringement.

    . . .

(d)    Stay with Bond on Appeal. If an appeal is taken, the appellant may obtain a stay by supersedeas bond, except in an action described in Rule 62(a)(1) or (2). The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond.

Fed. R. Civ. P. 62.

"While the Third Circuit has not spoken on the issue, district courts in this circuit have joined Courts of Appeals of sister circuits in holding that Rule 62(d) does not limit district courts from exercising their discretion to waive the supersedeas bond requirement in certain cases." *Tomasko v. Ira H. Weinstock, P.C.*, No. 3:98-cv-1978, 2009 U.S. Dist. LEXIS 17334, at *2

(M.D. Pa. Mar. 6, 2009) (citing *AMG Nat'l Trust Bank v. Ries*, No. 06-cv-4337, 2008 U.S. Dist.

LEXIS 44014, at *3 (E.D. Pa. June 4, 2008); *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*,

636 F.2d 755, 758 (adopting this view and collecting cases)).  However, courts have also held

that they should only exercise this discretion "in exceptional circumstances and where there

exists an alternative means of securing the judgment creditor's interest." *Tomasko v. Ira H.*

*Weinstock, P.C.*, 2009 U.S. Dist. LEXIS 17334 at *2 (quoting *AMG Nat'l Trust Bank,* 2008 U.S.

Dist. LEXIS 44014 at *4); *see also United States v. Kurtz*, 528 F. Supp. 1113, 1116 (E.D. Pa.

1981) ("[O]nly 'extraordinary circumstances' will support the provision of security other than a

supersedeas bond.) (citing *C. Albert Sauter Co. v. Richard S. Sauter Co.*, 368 F. Supp. 501, 520

(E.D. Pa.1973); *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189,

1191 (5th Cir. 1979); *Trans World Airlines, Inc. v. Hughes*, 314 F. Supp. 94, 96 (S.D.N.Y. 1970),

*approved*, 515 F.2d 173 (2d Cir. 1975), *cert. denied*, 424 U.S. 934 (1976)).

### 1.        The Supersedeas Bond Requirement Should Not Be Waived

        In determining whether to waive the requirement of posting a bond, several district courts

in this circuit have considered the factors set forth by the Seventh Circuit Court of Appeals: (1)

the complexity of the collection process; (2) the amount of time required to obtain a judgment

after it is affirmed on appeal; (3) the degree of confidence that the district court has in the

availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment

is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in

such a precarious financial situation that the requirement to post a bond would place other

creditors of the defendant in an insecure position. *Tomasko* , 2009 U.S. Dist. LEXIS 17334 at *3

(citing *Munoz v. City of Philadelphia*, 537 F. Supp. 2d 749, 751 (E.D. Pa. 2008) (citing *Dillon v.*

*City of Chicago*, 866 F.2d 902 (7th Cir. 1988)); *see also Hurley v. Atlantic City Police Dept.*, 944

F. Supp. 371, 374 (D.N.J. 1996) (citing *Dillon*, 866 F.2d at 904-05); *Leff v. First Horizon Home*

*Loan*, No. 05-3648, 2007 U.S. Dist. LEXIS 65094, at *19 (D.N.J. Sept. 4 2007) (citing Hurley,

944 F.Supp. at 374).

      Abbott argues that it meets each of these five factors, asserting that the declarations

submitted in support of its motion demonstrate that its "financial strength and ability to satisfy

the Judgment are beyond any reasonable dispute." (Abbott's Motion at 2-3).  Abbott further

asserts that, the fact that its ability to pay such a Judgment, which is just a small fraction of its

cash holdings and net worth, is beyond dispute is sufficient basis alone to waive the bond

requirement.  *Id.* at 4 (citing *Glass v. Snellbaker*, No. 05-1971, 2008 U.S. Dist. LEXIS 71241, at

*24 (D.N.J. Sept. 17, 2008).  Abbott also notes that it has ready access to funds necessary to pay

the full Judgment should it be affirmed on appeal. (Abbott's Motion at 5).  Specifically, Abbott

states that as of December 31, 2009, it held cash and cash equivalents of approximately

$4,112,022,000.00 that are available for such a purpose.  *Id.* (citing Decl. of Charles M. Santora

[Docket No. 332], at ¶ 4).  Abbott also argues that waiver is appropriate because there is no

danger that Abbott, a publicly traded company, will attempt to evade its obligation to pay the

Judgment.  *Id.* at 6 (citing *Ne. Indiana Pub. Serv. Co. v. Carbon County Coal Co.*, 799 F.2d 265,

281 (7th Cir. 1986)).

      C&D counters that waiver of the bond requirement is not appropriate because Abbott has

failed to demonstrate exceptional circumstances and an alternative means of securing the

judgment.  (C&D's Opp. at 3-4 (citing *Tomasko* 2009 U.S. Dist. LEXIS 17334, at *2; *AMG Nat'l*

*Trust Bank,* 2008 U.S. Dist. LEXIS 44014, at *4; *Porter v. Nationscredit Consumer Disc. Co.*,

No. 03-03768, 2007 U.S. Dist. LEXIS 1432, at *5 (E.D. Pa. Feb. 28, 2007), *aff'd*, 285 Fed.

Appx. 871 (3rd Cir. 2008); *Chase Manhattan Bank v. Hirschensohn*, No. Civ. 1999-033, 2001

U.S. Dist. LEXIS 22431, at *3 (D.V.I. Dec. 28, 2001) (internal citation omitted). C&D further

argues that a number of cases cited by Abbott in support of its position that a debtor's ability to

pay is sufficient to warrant an unsecured stay are distinguishable because they involve judgment

debtors that are either a government entity, an agent potentially indemnified by a government

entity, an agent of the government, or an entity jointly liable with a government entity. (C&D's

Opp. at 5 (citing *Munoz* , 537 F. Supp. 2d 749 (refusing to require Philadelphia Redevelopment

Authority to post a bond where it was jointly liable with City of Philadelphia); *Glass*, 2008 U.S.

Dist. LEXIS 71241, (refusing to require Police Chief to post a bond); *Hurley*, 944 F. Supp. 371

(refusing to require defendant to post a bond where, among other things, he is a police officer and

the city had promised to indemnify him))).  C&D also notes that courts have held that an

appellant's demonstrated financial security alone is an insufficient basis to waive the bond

requirement and that, given the current economic crisis, such reasoning is even more applicable

today.  (C&D's Opp. at 5-6 (citing *Tunis Bros. Co., Inc. v. Ford Motor Co.*, Civ. A. No. 82-5557,

1991 U.S. Dist. LEXIS 897 (E.D. Pa. Jan. 24, 1991), *aff'd in part, rev'd in part on other*

*grounds*, 952 F.2d 715 (3rd Cir. 1991);  *Leff* ,2007 U.S. Dist. LEXIS 65094.

       The Court concludes that the supersedeas bond requirement should not be waived in the

instant case.  Although Abbott asserts that it has put forth evidence that it has satisfied all of the

five factors a court must consider in determining whether waiver of this requirement is

appropriate, in reality it has only demonstrated that it is financially secure and therefore currently

able to pay the Judgment.  For example, Abbott has not put forth any evidence that the collection

of the Judgment would not be complex nor that obtaining a judgment on appeal would be timely. *See Tomasko,* 2009 U.S. Dist. LEXIS 17334 at *3 (citation omitted).   Additionally, Abbott's financial strength demonstrates that it is not in a precarious financial situation and that the posting of a bond would place other creditors in an insecure position. *Id.* If anything, Abbott has demonstrated that it would not be a financial hardship for it to post a bond.

Further, as C&D notes, Abbott has not demonstrated that extraordinary circumstances warrant waiver of the bond requirement nor that an alternative means of securing the Judgment is available. *Tomasko* 2009 U.S. Dist. LEXIS 17334, at *2.  In fact, C&D has put forth evidence that it proposed a compromise to Abbott, whereby C&D would have agreed to waive the bond requirement if Abbott agreed to: (1) enter a stipulation and (2) obtain a letter of credit in favor C&D in the amount of the Judgment. (C&D's Opp. at 2 (citing Decl. of Steven H. Holinstat, Exh. 1).  However, Abbott rejected this alternative means of securing the judgment and instead chose to proceed with the instant motion.  *Id.*  In light of the foregoing, Abbott has not demonstrated that it is entitled to waiver of the bond requirement.

> **2**.        **Abbott is Entitled to Post a Bond in an Amount Equal to the Judgment Plus Costs, Fees and Interest**

As Abbott notes, "the plain language of Fed. R. Civ. P. 62(d) nevertheless entitles an appellant to a stay of execution on a judgment as a matter of right if the appellant posts an appropriate bond. (Abbott's Motion at 6 (citing *Pharmacia Corp. v. Motor Carrier Servs. Corp*., No. 04-3724, 2008 U.S. Dist. LEXIS 2510, at *9 (Mar. 28, 2008) ("[I]t seems to be accepted that a party taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right if he posts a bond in accordance with Fed. R. Civ. P. 62(d)."); *see also Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting-Paramount*, 87 S. Ct. 1, 3 (1966) (citing *In re Fed. Facilities*

*Realty Trust*, 227 F.2d 651, 655 (7th Cir. 1955)).  "Indeed, the Supreme Court has described the

Rule 62(d) stay as 'automatic.'" *Pharmacia*, 2008 U.S. Dist. LEXIS 2510 at *9 (citing *Becker v.*

*United States*, 451 U.S. 1306, 1308 (1981); see also *Nicholas v. Wyndham Int'l, Inc.*, No. 01-147,

2007 U.S. Dist. LEXIS 94333, at *3 (D. V.I. Dec. 21, 2007) ("The rule entitles a party who files

a satisfactory supersedeas bond to a stay of money judgment as a matter of right.").  As such,

Abbott is entitled to a stay of the Judgment provided it supply such a bond.

### 3.        The Amount of Supersedeas Bond

With respect to the amount of the bond that Abbott is required to post, "a supersedeas

bond 'must normally be in a sum sufficient to pay the judgment and costs, interest, and damages

for delay.'" *Cashman Equip. Corp. v. U.S. Fire Ins. Co.*, No. 06-3259, 2008 U.S. Dist. LEXIS

95657, at *13 (E.D. Pa. Nov. 21, 2008) (quoting *Pharmacia*, 2008 U.S. Dist. LEXIS 25100 at

*10 (internal citation omitted)).  On February 20, 2009, the Judgment was entered in favor of the

C&D in the amount of $29,200,000.00. [Docket No. 323].  By this Memorandum Opinion, the

Judgment has been altered to include prejudgment interest in the amount of $8,813,328.00 and

taxable costs in the amount of $50,973.56.  The Court also holds in this Memorandum Opinion

that C&D is entitled to postjudgment interest pursuant to 28 U.S.C. § 1961(a), which states that

such interest  is "calculated from the date of the entry of the judgment, at a rate equal to the

weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors

of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28

U.S.C. § 1961(a).  The federal reserve website indicates that this figure, for the week ending

February 13, 2009, was 0.6%.[5]  Postjudgment interest is "'computed daily to the date of

---

[5] http://www.federalreserve.gov/releases/h15/20090217/

payment' and 'shall be compounded annually.'" *Cashman.,* 2008 U.S. Dist. LEXIS 95657 at *19 (quoting 28 U.S.C. S. § 1961(b)).

Although the parties have not submitted evidence regarding the median duration between the filing of a notice of appeal with the Federal Circuit and the case disposition, the Court notes that, according to the Federal Circuit's official website, such a median for the year 2008 fiscal year (which is the most recent time period for which such data is available) is 8.4 months.[6]  As such, the Court will use this time period in its estimation of the potential amount of postjudgment interest for which Abbott will eventually be liable.

Taking the $38,064,301.56 aggregate total of the outstanding judgment, prejudgment interest and taxable costs, and applying the 0.6% interest rate to it, $228,385.81 in interest is earned in twelve months, or $19,032.15 a month.  Applying this per month amount to the 8.4 month median period, $159,870.06 is earned during such a period.[7]  Adding this amount to the previous total, the total amount of judgment, prejudgment interest, taxable costs and postjudgment interest earned during the median case disposition duration is $38,224,171.62.  As such, Abbott is required to submit a supersedeas bond in such an amount within 30 days in order to secure stay of judgment pending appeal.

## III.   CONCLUSION

For the foregoing reasons, (1) C&D's motion for attorney fees and non-taxable costs is

---

[6] http://www.cafc.uscourts.gov/pdf/CaseloadAnalysisFY08.pdf

[7]Because this calculation is based on the median duration between the filing of a notice of appeal with the Federal Circuit and the case disposition, the Court has also estimated that 8.4 months approximately equals 252 days (assuming that each month includes 30 days) for simplicity's sake.

denied [Docket No. 334]; (2) C&D's motion for a bill of costs [Docket No. 331] is denied; (3)

C&D's motion to amend the judgment to include prejudgment and postjudgment interest is

granted [Docket No. 328]; and (4) Abbott's motion to stay execution on the judgment pending

appeal without being required to post a supersedeas bond or, in the alternative, for approval of a

bond is granted in part and denied in part [Docket No. 332].  An appropriate form of order is

filed herewith.

Dated:  July  23, 2009

                                        _____/s/ Garrett E. Brown, Jr._____
                                        GARRETT E. BROWN, JR., U.S.D.J.